FILED
United States Court of Appeals
Tenth Circuit

June 29, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellant,

v.                                                  No. 09-6246

CRISS L. MCGINTY,

  Defendant-Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:09-CR-00148-R-1)**

Scott E. Williams, Assistant United States Attorney (Sanford C. Coats, United States Attorney, with him on the briefs), Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Thomas S. Bala, Oklahoma City, Oklahoma, for Defendant-Appellee.

Before **BRISCOE,** Chief Judge, **HAWKINS**[*], and **MURPHY**, Circuit Judges.

**BRISCOE**, Chief Judge.

  In this case we address the mandatory nature of the criminal forfeiture

---

[*] The Honorable Michael D. Hawkins, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

statute, 18 U.S.C. § 982(a)(2); the distinction between forfeiture and restitution; and the government's ability to obtain at sentencing a money judgment representing the full amount of a defendant's unlawful proceeds from an offense.

Pursuant to a plea agreement, Criss L. McGinty was convicted of one count of misapplication of bank funds in violation of 18 U.S.C. § 656. At sentencing, the district court ordered forfeiture of McGinty's house and the proceeds from the sale of his boat and boat motor. The house, boat, and motor were subject to criminal forfeiture under 18 U.S.C. § 982(a)(2) as proceeds of his unlawful activity. The government appeals the district court's order of forfeiture imposed at sentencing, arguing that it is entitled to a money judgment representing the full amount of McGinty's unlawful proceeds. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b)(1), we reverse and remand.

I

From 2006 until 2009, McGinty was employed as the executive vice president of Glencoe State Bank in Glencoe, Oklahoma. During that time, McGinty transferred over $500,000 from a customer's account, Dove Construction, LLC, to his own personal account. He then used the money in his personal account to pay for construction on his house and other personal expenses. While transferring funds from the Dove Construction account, that account was often overdrawn, and as vice president, McGinty approved the overdrafts. When the FDIC began an examination of the bank, he provided

2

falsified documents and bank statements to the FDIC examiners.

McGinty was subsequently indicted on one count of misapplication of bank funds in violation of 18 U.S.C. § 656, two counts of knowingly making false statements to the FDIC in violation of 18 U.S.C. § 1007, and one count of obstructing a bank examination in violation of 18 U.S.C. § 1517. The indictment also sought the criminal forfeiture of McGinty's property pursuant to 18 U.S.C. § 982(a)(2).

On July 2, 2009, McGinty and the government entered into a plea agreement. The agreement provided that McGinty would plead guilty to count one of the indictment, misapplication of bank funds in violation of 18 U.S.C. § 656, and the government would dismiss the remaining counts of the indictment. The plea agreement further provided as follows:

> The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all proceeds of the offense pursuant to 18 U.S.C. § 982(a)(2)(A) that are in the possession and control of the defendant or nominees. The defendant agrees that those proceeds include $536,995.00, which represents a portion of the money obtained as a result of the offense charged in Count One. The defendant further agrees to the entry of a money judgment in this amount at sentencing.

Appellant's App. at 15–16. McGinty also agreed that his house, boat, and boat motor were subject to forfeiture because they were purchased with money obtained from his misapplication of bank funds. The agreement further provided "that the net funds generated by any forfeiture of the [house, boat, and boat

3

motor] will be credited to the $536,995.00 money judgment." Id. at 17.

In September 2009, the government filed a motion for a preliminary order of forfeiture. The government requested a personal money judgment against McGinty for $536,995, and forfeiture of McGinty's house and a cashier's check in the amount of $8,500, representing the proceeds from the sale of the boat and boat motor. McGinty filed a response to the government's motion and requested that the forfeiture judgment should be reduced because he repaid $320,000 to the bank. Relatedly, in his sentencing memorandum, McGinty argued that the loss amount of $645,459.55 set forth in the presentence report should also be reduced by the $320,000 amount he had repaid to the bank. McGinty represented to the district court that forfeiture was in the court's discretion, and he requested that the district court reduce the forfeiture judgment amount to the amount of loss, which he calculated to be $325,459.55.

At the sentencing hearing on October 7, 2009, the district court concluded that for purposes of calculating McGinty's offense level under the Sentencing Guidelines, the loss amount should be calculated at $325,459.55, after taking into consideration the $320,000 that McGinty had already repaid to the bank.[1] The district court then heard argument regarding whether it was required to order both restitution and forfeiture. The government requested both, and the district court

---

[1] The government has not appealed the sentence or the district court's calculation of the loss amount under the Sentencing Guidelines.

4

asked: "Why wouldn't that be a double recovery?" Appellant's App. at 118. The government argued that both restitution and forfeiture were mandatory under the respective statutes, and that ordering both would not result in a double recovery because the restitution would go to the bank, and the forfeiture would go to the United States. McGinty responded that ordering both restitution and the forfeiture of $325,459.55 would be a "double dip." Id. at 119. The district court asked "Do I have – do I have any alternative in regard to forfeiture? I think it's unfair, the double recovery." Id. at 120. Again, McGinty suggested that the forfeiture amount was "totally in [the district court's] discretion," and the government responded that the court was required to order both restitution and forfeiture. Id. The district court then asked: "What would the government prefer? I mean, you've got a check for $325,000. Do you prefer that or do you prefer the forfeiture? I'm not going to order both of them." Id. at 121. Finally, the district court concluded:

> Well, what I'm going to do, then, is I'm going to order the payment to the victim of the $325,000 and I'll order forfeiture of the home and the boat and that will be the limit of my order of restitution. I think that's the only reasonable thing to do under the circumstances, the fair thing to do.

Id. at 123. The district court then sentenced McGinty to eighteen months' imprisonment.

On October 9, 2009, the government filed a motion to correct the sentence pursuant to Federal Rule of Criminal Procedure 35(a), arguing that the district

5

court clearly erred in its forfeiture ruling by failing to include a money judgment

in the amount of $325,459.55.  The district court entered an order on October 21,

2009, denying the government's motion to correct McGinty's sentence.[2]  This

timely appeal followed.

## II

The government contends that it is entitled to the forfeiture of the proceeds

of McGinty's misapplication of bank funds, and the district court erred in refusing

to order a money judgment representing those proceeds.  We agree.

As an initial matter, the parties dispute our standard of review.  According

to the government, our review is de novo because this appeal presents issues of

statutory interpretation.  McGinty contends that because criminal forfeiture is

imposed at sentencing, our review is for an abuse of discretion, following United

States v. Booker, 543 U.S. 220 (2005).  We agree with the government.  Although

criminal forfeiture may be imposed at sentencing, the case at bar involves

statutory interpretation, which we review de novo.  See United States v. Nacchio,

---

[2] The version of Rule 35(a) which was effective in October 2009 allowed a district court to correct a sentence within seven days after sentencing.  Although we have previously held that this time limit is jurisdictional, see United States v. Green, 405 F.3d 1180, 1186 (10th Cir. 2005), the Supreme Court may have called that holding into doubt, see Eberhart v. United States, 546 U.S. 12, 18–20 (2005) (per curiam); see also United States v. Sterling, 225 F. App'x 748, 751 (10th Cir. 2007) ("Eberhart v. United States calls into doubt the jurisdictional nature of Rule 35(a)'s time limits.").  We need not decide whether the time limit is jurisdictional because the timing of the filing of the district court's order is immaterial to our analysis.

573 F.3d 1062, 1087 (10th Cir. 2009); United States v. Jones, 502 F.3d 388, 391 (6th Cir. 2007) ("This court reviews the district court's interpretation of the federal forfeiture laws de novo.").

We begin with the plain language of the statute. United States v. Manning, 526 F.3d 611, 614 (10th Cir. 2008). The criminal forfeiture statute at issue provides:

> The court, in imposing a sentence on a person convicted of a violation of, or a conspiracy to violate—
>
> > (A) section . . . 656 . . . of this title, affecting a financial institution . . .
>
> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

18 U.S.C. § 982(a)(2).

In interpreting another forfeiture statute with nearly identical language, the Supreme Court has explained: "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited." United States v. Monsanto, 491 U.S. 600, 607 (1989) (interpreting 21 U.S.C. § 853); see also United States v. Bieri, 68 F.3d 232, 235 (8th Cir. 1995) ("[T]he mandatory language of [§ 853(a)] does not leave forfeiture to trial court discretion."). Similarly, the plain language of 18 U.S.C. § 982(a)(2) indicates the mandatory nature and scope of criminal forfeiture.

7

Section 982(a)(2) directs that the district court "shall order" forfeiture of "any property constituting, or derived from" the unlawful proceeds. These words express Congress's intent that criminal forfeiture is both mandatory and broad. "The Supreme Court and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command." Forest Guardians v. Babbitt, 174 F.3d 1178, 1187 (10th Cir. 1999) (citing Monsanto, 491 U.S. at 607). "The word 'shall' does not convey discretion. It is not a leeway word, but a word of command." United States v. Fleet, 498 F.3d 1225, 1229 (11th Cir. 2007) (quotation omitted) (interpreting 21 U.S.C. § 853(p)). Further, "'any' . . . is a powerful and broad word. It does not mean some or all but a few, but instead means all." Id. Thus, criminal forfeiture is not a matter within the district court's discretion. Instead, the district court must order forfeiture of any and all proceeds of the offense and any property derived from those proceeds. 18 U.S.C. § 982(a)(2).

Although the criminal forfeiture statute does not explicitly refer to money judgments, our sister circuits have uniformly recognized that money judgments representing the unlawful proceeds are appropriate. See United States v. Padron, 527 F.3d 1156, 1162 (11th Cir. 2008); United States v. Day, 524 F.3d 1361, 1377–78 (D.C. Cir. 2008); United States v. Vampire Nation; 451 F.3d 189, 201–03 (3d Cir. 2006); United States v. Casey, 444 F.3d 1071, 1076–77 (9th Cir. 2006); United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006); United States v.

8

Baker, 227 F.3d 955, 970 (7th Cir. 2000). According to the First Circuit,

> [t]here are two primary reasons for permitting money judgments as part of criminal forfeiture orders. First, criminal forfeiture is a sanction against the individual defendant rather than a judgment against the property itself. Because the sanction follows the defendant as a part of the penalty, the government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction. Second, permitting a money judgment, as part of a forfeiture order, prevents a [defendant] from ridding himself of his ill-gotten gains to avoid the forfeiture sanction.

Hall, 434 F.3d at 59 (internal citations and quotations omitted). We agree with the reasoning of our sister circuits and conclude that in personam money judgments are appropriate under criminal forfeiture.

The government is entitled to a money judgment against McGinty for the money he obtained from his criminal activity. See United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999) ("[T]he government is entitled to an in personam judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense."); see also Vampire Nation, 451 F.3d at 201–02 ("Given that § 853 does not contain any language limiting the amount of money available in a forfeiture order to the value of the assets a defendant possesses at the time the order is issued, we think it clear that an in personam forfeiture judgment may be entered for the full amount of the criminal proceeds."). Accordingly, the district court erred in refusing to enter a money judgment against McGinty. See Casey, 444 F.3d at 1077 ("Because we hold that the government is entitled to a money judgment in criminal forfeiture cases, even

9

when a defendant has no assets, the district court erred by refusing to enter the requested money judgment against [the defendant].").

The district court suggested that ordering restitution and forfeiture in the same amount would be unfair as a double recovery. Specifically, the district court stated: "I'm going to order the payment to the victim of the $325,000 and I'll order forfeiture of the home and the boat and that will be the limit of my order of restitution. I think that's the only reasonable thing to do under the circumstances, the fair thing to do." Appellant's App. at 123. The district court erred in concluding that it could equitably reduce the forfeiture amount owed by McGinty in light of the amount he was also required to pay to the bank in restitution.

Criminal forfeiture and restitution are separate remedies with different purposes. "Criminal forfeiture is an in personam action in which the forfeiture of and the vesting of title in the United States in the defendant's tainted property is imposed as a punishment against the defendant." United States v. Jarvis, 499 F.3d 1196, 1203 (10th Cir. 2007). Restitution is not punitive, but is instead designed to compensate victims. United States v. Nichols, 169 F.3d 1255, 1279–80 (10th Cir. 1999); see also United States v. Webber, 536 F.3d 584, 602–03 (7th Cir. 2008) ("Forfeiture and restitution are distinct remedies. Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the

10

offender realized from his illegal activity." (internal citation omitted)). Because

restitution and forfeiture are distinct remedies, ordering both in the same or

similar amounts does not generally amount to a double recovery. See United

States v. Leahy, 464 F.3d 773, 793 n.8 (7th Cir. 2006) ("While we recognize to

the untrained eye, this might appear to be a 'double dip,' restitution and forfeiture

serve different goals, and we have approved of [ordering both restitution and

forfeiture] in the past."); see also United States v. Taylor, 582 F.3d 558, 566–67

(5th Cir. 2009) (discussing the distinction between forfeiture and restitution).[3]

Moreover, restitution and forfeiture will not necessarily be in the same amount

because "restitution is calculated based on the victim's loss, while forfeiture is

based on the offender's gain." Webber, 536 F.3d at 603.[4]

> [P]aying restitution plus forfeiture at worst forces the offender to
> disgorge a total amount equal to twice the value of the proceeds of the
> crime. Given the many tangible and intangible costs of criminal
> activity, this is in no way disproportionate to the harm inflicted upon
> government and society by the offense. Payment of restitution in no
> way alters the status of the property as ill-gotten gains. Restitution
> operates to make the victim of the crime whole, not to confer legal

---

[3] We note that this case does not present the issue of whether an order of restitution could arguably be reduced to prevent double recovery when both forfeiture and restitution are ordered to be paid to the same government agency. E.g., United States v. Ruff, 420 F.3d 772, 775–76 (8th Cir. 2005) (remanding to determine whether the "victim" law enforcement agency "received any forfeiture funds" and directing the district court to "modify the restitution order to prevent double recovery").

[4] The government has conceded that the forfeiture amount should be reduced to the loss amount of $325,459.55. We offer no opinion on the propriety of using the loss amount to calculate the proper amount of forfeiture.

ownership on the offender of the stolen property.

Taylor, 582 F.3d at 566 (quoting United States v. Emerson, 128 F.3d 557, 567 (7th Cir. 1997), alterations omitted).  Thus, ordering forfeiture in addition to restitution is not an unfair double recovery.

In this case, both forfeiture and restitution were mandatory.  See 18 U.S.C. §§ 982(a)(2), 3663A(a)(1) ("[T]he court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ."); see also Taylor, 582 F.3d at 566 (holding that by ordering both restitution and forfeiture, "[t]he district court properly adhered to the mandatory language found within the statutory schemes").  Nothing in the statutory scheme permitted the district court to reduce the mandated criminal forfeiture order because the defendant also had to satisfy his obligation to pay restitution.  See United States v. Hoffman-Vaile, 568 F.3d 1335, 1344–45 (11th Cir. 2009) (rejecting the argument that forfeiture under § 982(a)(7) should be reduced based on restitution); cf. United States v. Alalade, 204 F.3d 536, 540 (4th Cir. 2000) ("[T]he plain language of the [Mandatory Victims Restitution Act of 1996] did not grant the district court discretion to reduce the amount of restitution required to be ordered by an amount equal to the value of the property seized from [the defendant] and retained by the government in administrative forfeiture.").

McGinty contends that even if forfeiture in general is mandatory, the district court did not err in refusing to enter a forfeiture money judgment.  In

12

particular, McGinty argues that Federal Rule of Criminal Procedure 32.2(b)[5] prohibits the district court from entering both a money judgment and an order forfeiting specific property. Under Rule 32.2(b), "[i]f the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it." Fed. R. Crim. P. 32.2(b)(2). According to McGinty, the word "or" precludes the district court from entering both a money judgment and forfeiture of specific property. We are not persuaded by this argument.

In context, the nature of a particular forfeiture order will depend on the relevant forfeiture statute as well as the facts of a given case. The applicable statute provides that McGinty must forfeit "any property constituting, or derived from, proceeds" that he obtained from his misapplication of bank funds. 18 U.S.C. § 982(a)(2). Thus, under this statute, hybrid orders may be appropriate where the government is entitled to both proceeds and specific assets derived from those proceeds. Moreover, such hybrid orders are fairly common and have been upheld by other courts. See Hall, 434 F.3d at 60 n.8 (rejecting the argument that "even if the court could enter a money judgment, it could not enter both a

---

[5] The Federal Rules of Criminal Procedure were amended, effective December 1, 2009. Our citations are to the version of the rules in effect at the time of the proceedings before the district court.

13

money judgment and a forfeiture of specific assets as part of the same order" and noting that "there are several cases in which such hybrid orders have been entered").

The government requests that we direct the district court to enter a forfeiture money judgment in the amount of $325,459.55. Although we agree that the government is entitled to a money judgment, we do not address the proper amount of the requisite forfeiture order. The district court made no findings regarding the amount of the proceeds of McGinty's misapplication of bank funds or what property was derived from those proceeds. The district court is in the best position to make these factual determinations by conducting any necessary factfinding and considering the effect of the plea agreement, as well as the effect of any proceeds received by the government from the sale of the house, boat, and boat motor.

III

We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.