UNITED STATES of America, Plaintiff,

v.

Gabriel Seth JOSEPH, Defendant.

Case No. 2:15–cr–103–JNP–BCW

United States District Court, D. Utah.

Signed May 4, 2016

---

Stewart C. Walz, Jacob J. Strain, Stewart M. Young, US Attorney's Office, Salt Lake City, UT, for Plaintiff.

## ORDER GRANTING MOTION FOR FORFEITURE

Jill N. Parrish, United States District Court Judge

Before the court is a Motion for Forfeiture filed by the United States. (Docket 127). Pursuant to a briefing schedule agreed upon by the parties, Mr. Joseph filed his opposition to the Motion for Forfeiture on April 22, 2016. (Docket 156). The United States filed its response on April 29, 2016. (Docket 159). After a review of the parties' submissions and the relevant law, the court issues this Order Granting Motion for Forfeiture.

### FACTUAL BACKGROUND

On March 25, 2015, a Grand Jury returned a superseding indictment against defendant Gabriel Seth Joseph based on his orchestration of a mortgage fraud scheme. (Docket 7). The superseding indictment contained a Notice of Intent to Seek Forfeiture of all the proceeds involved or obtained directly or indirectly from the offense and the scheme to defraud.

On November 3, 2015, a jury convicted Mr. Joseph of Wire Fraud in violation of 18 U.S.C. section 1343; Money Laundering in violation of 18 U.S.C. section 1957; Making a False Statement to a Bank in violation of 18 U.S.C. section 1014; and Willfully Failing to File a Tax Return in violation of 26 U.S.C. section 7203.

### A. The Fraudulently Obtained Loans

The evidence at trial demonstrated that Mr. Joseph executed a scheme in which he pretended to sell real property he already owned through his company, SCIPC LLC, to himself for an inflated price. He then used that sales contract and other misrepresentations about his income, assets, and intent to live in the property to deceive Washington Mutual Bank ("Washington Mutual") into providing him with a mortgage of $4,959,586.88 and a line of credit of $699,771.00. Mr. Joseph defaulted on both loans. Through this scheme, and his false statements to Washington Mutual, Mr. Joseph defrauded Washington Mutual out of loan proceeds of $5,659,357.88.

### B. The Money Laundering

On February 23, 2007, Mr. Joseph caused Utah Standard Title Insurance Agency to transfer $1,986,991.02 of the Washington Mutual loan proceeds (that were the proceeds of his wire fraud) from Utah Standard's Zions Bank account to a bank account in the name of SCIPC at Utah Community Credit Union.

### C. Motion for Forfeiture

The United States filed this motion for forfeiture nine days after the jury reached a verdict in Mr. Joseph's case. Due to the nature of the Mr. Joseph's crimes, the Office of Probation requested 120 days to complete its presentence report. Accordingly, Mr. Joseph's sentencing was initially set for April 14, 2016. On March 22, 2016, Mr. Joseph filed a notice that he had retained replacement counsel. After receiving no opposition to the Motion for Forfeiture, the United States filed a Notice of Request to Submit for Decision on April 8, 2016. Shortly thereafter, Mr. Joseph's new counsel requested an evidentiary hearing in connection with sentencing.

The court vacated the April 14, 2016 sentencing and instead held an evidentiary hearing on that same date. At that hearing, the court inquired whether Mr. Joseph's new counsel intended to oppose the Motion for Forfeiture. After replying in the affirmative, all counsel accepted the court's proposed briefing schedule for the Motion for Forfeiture. According to the agreed-upon schedule, Mr. Joseph was to file his opposition by April 22, 2016, and the United States was to file its reply by April 29, 2016. That briefing schedule was again confirmed by all counsel at a further evidentiary hearing, held at Mr. Joseph's request, on April 20, 2016. All parties complied with the agreed-upon briefing schedule.

Mr. Joseph will be sentenced on May 27, 2016, more than three weeks away from the date of this order. In the interim, the United States and Mr. Joseph are to file simultaneous memoranda in support of their sentencing position statements by May 6, 2016. The parties may then file a response to the opposing party's memorandum by May 13, 2016. The court will hear oral argument as to the amount of loss and any other disputed factual or legal issues on May 20, 2016.

### ANALYSIS

The United States has requested that the court impose a forfeiture money judgment in the amount of $5,659,357.88 for Mr. Joseph's wire fraud convictions and a concurrent money judgment of $1,983,991.02 for his money laundering conviction. By statute, Congress has identified the types of property that are subject to forfeiture. Under 18 U.S.C. section 982(a)(2)(A), when a person is convicted of wire fraud (18 U.S.C. section 1343) or false statements (18 U.S.C. section 1014) affecting a financial institution, then the court "shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person ob-

tained directly or indirectly, as the result of such violation." And under 18 U.S.C. section 982(a)(1), when a person is convicted of violating the money laundering spending statute (18 U.S.C. section 1957), the court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." The Tenth Circuit has held that such forfeiture is mandatory. *United States v. McGinty*, 610 F.3d 1242, 1246 (10th Cir. 2010).

Mr. Joseph advances two arguments against forfeiture in his case. First, he contends that the mandatory provisions of Federal Rule of Criminal Procedure 32.2 have not been followed. Second, he argues that the forfeiture sought by the United States would constitute an excessive fine under the Eighth Amendment. The court will consider each argument in turn.

## I. Federal Rule of Criminal Procedure 32.2 was Satisfied

■ Mr. Joseph's first argument is that Rule 32.2 of the Federal Rules of Criminal Procedure was not satisfied by the court or the United States. Rule 32.2 provides that "[a]s soon as practical after a verdict ... of guilty ... on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R.Crim.P. 32.2(b)(1)(A). Additionally, "[i]f the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment." *Id.* at 32.2(b)(2)(A). "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)." *Id.* at 32.2(b)(2)(B).

Mr. Joseph argues that both this court and the United States violated Rule 32.2 by "delaying" the entry of a forfeiture judgment. He contends that the court did not enter a forfeiture order "as soon as practical" after the verdict. But that argument is belied by the record and the practical realities in this case.

■ The United States complied with Rule 32.2 by including in the indictment a notice that it was seeking forfeiture, and by filing its Motion for Forfeiture nine days after the verdict was returned. Likewise, the court has complied with the rule. Although some months have now passed since the verdict, it was not practical to enter the preliminary forfeiture order until now for three reasons. First, the court wanted the benefit of a completed presentence report before ruling on the forfeiture motion. Second, the motion only became fully-briefed five days ago. Finally, Mr. Joseph has suffered no prejudice.

The court wanted the benefit of a completed presentence report before ruling on the forfeiture motion. Mr. Joseph's crimes involved obtaining various loans from Washington Mutual and numerous wire transfers both to and from several financial institutions. The Office of Probation informed the court that for crimes such as these, additional time was necessary to prepare a presentence report in order to collect the voluminous financial records relevant to determining loss for purposes of restitution. Additionally, matters were complicated by the fact that Washington Mutual is now defunct and its assets were purchased by J.P. Morgan Chase Bank. While restitution and forfeiture are calculated differently, the court believed that it would be prudent to have the additional financial information contained in the presentence report in order to more accurately assess forfeiture. The

parties' responses to that presentence report were only filed on April 4, 2016.

Second, the briefing on the motion was completed just five days ago. Mr. Joseph's original counsel requested additional time to review the financial records in this case. On February 17, 2016, counsel for Mr. Joseph filed a "Motion for Extension of Time to File a Response to Pre–Sentence Report and Motion to Continue Sentencing Hearing," (Docket 129) arguing that counsel needed to subpoena financial institutions in order to obtain additional financial records. Counsel represented that he needed additional time in order to execute the subpoenas and review the further financial records he hoped to receive. That motion was granted over the United States' objection.

Rather than entering the forfeiture order immediately upon the expiration of Mr. Joseph's response time, the court gave Mr. Joseph the benefit of the doubt, assuming that he wanted the benefit of the additional financial information he had requested and the completed presentence investigation report before responding to the motion for forfeiture. And in fact, that assumption proved correct. At the hearing on April 14, 2016, Mr. Joseph's counsel indicated that he did want an opportunity to brief the motion and requested additional time to do so. The court proposed a briefing schedule to which all parties agreed. In accordance with that agreed-upon schedule, Mr. Joseph filed his memorandum opposing the United States' Motion for Forfeiture on April 22, 2016, and the United States filed its reply memorandum on April 29, 2016. Mr. Joseph cannot now contend that the briefing schedule to which he agreed, and which inured to his benefit, occurred too late. Given the disputed factual and legal issues, it was not practical to make the forfeiture determination until the briefing on the motion was complete.

Finally, Mr. Joseph has not been prejudiced. Mr. Joseph was informed of the United States' intent to seek forfeiture in the indictment. He was also put on notice by the Motion for Forfeiture filed shortly after the jury verdict. Mr. Joseph has not been prejudiced by the court allowing him additional time to oppose the motion. If anything, Mr. Joseph had the advantage of significant time to marshal his arguments, obtain additional factual material, conduct further research, and fully present his legal theories. And Mr. Joseph has ample time to review and object to the preliminary order of forfeiture, which is issued concurrently with this opinion. Indeed the order will not become final until Mr. Joseph's sentencing on May 27, 2016.

The court holds that Rule 32.2 has been followed in Mr. Joseph's case. It was not practical to enter the preliminary forfeiture order until the presentence report had been completed and the motion was fully briefed. This order represents the soonest practical time that was possible to determine forfeiture in this case. And even if there were some delay, Mr. Joseph has not been prejudiced.

## II. The Forfeiture Does Not Violate the Eighth Amendment

Mr. Joseph argues that the United States' proposed forfeiture constitutes an excessive fine and violates the Eighth Amendment. Specifically, he argues that the proposed forfeiture is grossly disproportionate to the gravity of his offense. *See United States v. Bajakajian,* 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (explaining that a forfeiture violates the Eighth Amendment if it is "grossly disproportionate to the gravity of a defendant's offense").

Under Tenth Circuit law, proportionality is assessed by:

considering the nature of the offense, the relationship of the offense to other illegal activity, the value and function of the defendant's property, the culpability of the claimant, the benefit reaped by the claimant, and the maximum sanction authorized by Congress for the offense. *United States v. Lot Numbered One of the Lavaland Annex*, 256 F.3d 949, 958 (10th Cir.2001). The United States argues that these factors do not apply to Mr. Joseph's case because the property to be forefeited here is the direct proceeds from the criminal activity, as opposed to property not criminally derived or only used to help facilitate the crime. But the court need not resolve this dispute because the forfeiture does not violate the Eighth Amendment in any event.

Mr. Joseph admits that the nature of the offense was serious, thus the first factor weighs in favor of the forfeiture's constitutionality. Mr. Joseph contends that the property was not connected to other illegal activity. While that may be true, all of the loan proceeds were directly derived from the criminal activity that provided the basis for Mr. Joseph's conviction. Similarly, the value and function of the property weigh against Mr. Joseph. All of the proceeds were criminally derived. Thus, the second and third factors also weigh in favor of constitutionality.

Mr. Joseph's culpability cannot reasonably be contested given the jury's verdict. The jury convicted him on all counts. He is culpable for the crimes that gave rise to the criminal proceeds. The proceeds that Mr. Joseph received, and now must forfeit, are exactly what he intended to gain from the scheme he devised and executed. He reaped the financial benefit of his crimes. This weighs in favor of full forfeiture.

Finally, the court considers the maximum sanction authorized by Congress. Mr. Joseph's wire fraud convictions subject him to a maximum of thirty years

imprisonment and a fine of twice the gain or loss from the offense. Similarly, the money laundering conviction subjects him to a maximum of ten years imprisonment and a fine of twice the gross gain or loss from the offense. Finally, the false statement to a bank conviction has a maximum term of imprisonment of thirty years and a maximum fine of $1,000,000. In light of these maximum possible sanctions, a forfeiture judgment representing only the value of the fraudulent loans Mr. Joseph obtained is not "grossly disproportionate."

In summary, all relevant factors indicate that imposing a forfeiture judgment against Mr. Joseph equal to the amount he obtained from his crimes is not grossly disproportionate. Accordingly, a forfeiture of $5,659,357.88 is constitutionally permissible.

**CONCLUSION**

The court holds that Federal Rule of Criminal Procedure 32.2 was not violated in this case. Additionally, the United States' proposed forfeiture does not violate the Eighth Amendment. Accordingly, the court GRANTS the United States' Motion for Forfeiture. (Docket 127). A separate Order of Forfeiture will be docketed in this case.