## Rose *against* The Turnpike Company.

Managers and officers do not form an integral part of a corporation. An omission to elect them at the time appointed by the charter, will not dissolve the corporation: its functions may be suspended thereby, and restored by subsequent elections.

A judgment of a justice against a plaintiff, on the merits, from which he appeals to the common pleas, and discontinues his suit, is a bar to any other for the same cause of action.

ERROR to the common pleas of *Mercer* county.

This was an action of *assumpsit* by the Roseburg and Mercer Turnpike Company against Ephraim Rose.

By an act of assembly passed the 10th of April 1826, sections twenty-six and twenty-seven, the Roseburg and Mercer Turnpike Road Company was incorporated. By section twenty-eight the commissioners were to give thirty days notice in one newspaper printed in each of the counties of Armstrong, Butler and Mercer, and the subscribers were to elect one president, six managers, one treasurer, and such other officers as they might think necessary to conduct the business of the company for one year, and until such other officers should be chosen. The same section enacts that the managers shall be on the same footing as are the president, managers and company of the Centre Turnpike Road Company by virtue of the act of the 22d of February 1812 incorporating that company. By the fifth section of this act it is provided that the said company shall meet on the first Monday in June in every year at such place as shall be fixed by their by-laws, for the purpose of choosing officers for the ensuing year, and at such other times as they shall be summoned by the managers in such manner and form as shall be prescribed by their by-laws, at which annual or special meetings they shall have full power and authority to make, alter or repeal, by a majority of votes, in manner aforesaid, all such by-laws, &c. and to do and perform any other corporate act.

The first election in this company took place on the 4th of September 1827 on the call of the commissioners, the notice being published in Armstrong and Butler, but not in Mercer county. Elections were subsequently held on the 28th of August 1828, agreeably to previous resolution, and on the 8th of September 1829 without resolution. On the first Monday of June 1830, an election by the company took place agreeably to resolution, and on due notice published by the commissioners; and elections were again held the first Monday of June 1831 and 1832: after which this suit was brought. It is contended by the defendant that in consequence of the neglect of

[Rose v. The Turnpike Company.]

the company previous to 1830 to elect managers and other officers at the time appointed by the charter, the corporation was dissolved, and this suit cannot be maintained.

On the 1st of June 1828 the plaintiff in error was sued for 22 dollars 50 cents, the amount of his stock called for up to that time, before a justice of the peace, who rendered judgment that the plaintiff should pay the costs of suit, having shown no cause of action, it not appearing that a call had been made by the company. From this judgment the company appealed; and on the 5th of November 1829 resolved to discontinue the suit, which was accordingly done in February 1830. The sum of 22 dollars 50 cents thus sued for, was embraced in the company's demand in the present action, to which the defendant below contended that the judgment of the justice was, so far as it went, a bar. The court below decided it was no bar, which decision is here assigned for error.

*Banks,* for the plaintiff in error.

The corporation became dormant by holding wrong elections, and could not reanimate itself. 1 *Bl. Comm.* 393, *note* 22; 8 *Mod.* 129. Where there is a day fixed, the stockholders cannot elect on any other day. If they do, the corporation becomes dissolved; and when it is dissolved, it can only be brought into being by a new charter. 10 *Mod.* 346. The court below decided that they had no jurisdiction. In this there was error. The corporation was dissolved in fact, without any legal proceedings. 2 *Bac. Ab.* 31, *tit. Corporation, C.* The case is different where the charter of a corporation is forfeited. Lehigh Bridge Company *v.* Lehigh Coal and Navigation Company, 4 *Rawle* 1. As to the case in 5 *Johns. Ch. Rep.* 378, there was an express provision in the statute conferring jurisdiction. Here we could have no writ of *quo warranto* out of the city of Philadelphia. Nor can a *scire facias* issue from this court. Here then would be a right without a remedy. 3 *Burr.* 1868. The judgment before the justice was on the merits, and is therefore a bar.

*Pearson,* for the defendants in error.

This case was argued before the court below in 1832. There was then no pretence that in 1831 there was an irregular election of officers. It was legally held, and the officers were legally chosen. The defence of the plaintiff in error cannot be maintained. The court below have no power to inquire into the fact of the dissolution of a corporation. The officers elected were officers *de facto,* and this was all we were bound to show. The question presented here cannot be decided collaterally. It can only be done by a writ of *quo warranto,* or by a *scire facias* from the supreme court. The Turnpike Company *v.* M'Conahy, 16 *Serg. & Rawle* 145; The Lehigh Bridge Company *v.* The Lehigh Coal and Navigation Company, 4 *Rawle* 1; 5 *Johns. Ch. Rep.* 379; Phillips *v.* Wickham, 1 *Paige* 590.

The opinion of the Court was delivered by

SERGEANT, J.—The principle seems to be settled in England, that a corporation is dissolved when an integral part is gone and the remaining parts are incapable of restoring it, or of doing any corporate act. The question seems chiefly to have arisen in relation to municipal corporations composed of mayor, aldermen and burgesses, instituted for the government of towns in their judicial concerns, police, or trade. When these corporations have fallen into such a state, by the loss of an integral part, that they are incapacitated from continuing their succession, or accomplishing the purposes for which they were created, the crown has treated them as dissolved, and granted a new charter. To prevent the occurrence of a dissolution, when the mayor or head officer was an integral part, and there was a failure to elect, the statute 11 *Geo.* 1, *c.* 4 was passed, providing for an election on another day.

Our corporations bear little resembance to the English municipal corporations either in design or constitution. The present, like many of our incorporations for civil purposes, either by special act of assembly, or under the act of 1791, is not a corporation composed of several integral parts. The stockholders constitute the company, and the managers and officers are their agents, necessary for the conduct and management of the affairs of the company, but not essential to its existence as such, nor forming an integral part. The corporation exists *per se*, so far as is requisite to the maintenance of perpetual succession, and holding and preserving its franchises. The non existence of the managers does not imply the non existence of the corporation. The latter is dormant during that time; its functions are suspended for want of the means of action: but the capacity to restore its functionaries by means of elections remains.

The total dissolution of a body politic, its political death and resolution into its original elements, would be attended with such momentous consequences, that it ought not lightly to happen. Not only would it affect its property, rights and responsibilities, but the beneficial purposes for which it was created would be frustrated, and the community, as well as individuals holding stock, be injured. No class of corporations would be exempt. Whether religious, charitable, or literary; whether for turnpikes, bridges, banks, insurances, canals, railroads, or any other purpose, all must be embraced within the rule; and if, by accident, inadvertence or design, there is one omission to elect managers on the day appointed, or the election made is void, the whole edifice of the corporation falls into ruins, and can only be reconstructed by legislative interference; even then perhaps after a lapse of time, and with some doubts as to its power to revest former rights, and to restore its identity. I see no reason why the company may not retain all their rights, powers and privileges, though there be a suspension of the power of action; nor why this power of action, though dormant for a time, may not be revived by a new election of the managers and officers competent to carry on its affairs,

[Rose *v.* The Turnpike Company.]

conformably to the directions of the charter. That may be done on the day appointed by the act, it not being required that the managers, officers, or any other persons should preside at, or do any act in reference to the election, which is conducted entirely under the control of the stockholders.

In the case of Phillips *v.* Wickham, in the court of chancery in New York, it was decided that a *quasi* corporation of the owners of certain drowned lands, created by act of the legislature, were not extinguished by the omission to elect their commissioners, who were annual officers, at the time designated by the act, but that at the period of the next annual election they might meet and choose commissioners for the ensuing year. 1 *Paige's New York Ch. Rep.* 590. See also *Angell and Ames on Corp.* 506.(*a*) It follows from these principles that there was no dissolution of this corporation, and that the elections of 1830, 1831 and 1832 were good, whatever may have been the character of the prior elections. It becomes therefore unnecessary to advert to the questions of the right of the officer selected to hold over, or of the effect of acts done by officers *de facto*, or of the right of the defendant to avail himself of such a defence, which have suggested themselves in the course of the present case.

On the other point however we think there was error in the charge of the court. If a party sue for a debt, and, for want of evidence, judgment be rendered for the defendant, it is conclusive against the plaintiff. Here the plaintiffs sued for part of their present claim; a judgment was rendered for the defendant because it did not appear that the company had made a call for the sums due. It is said that no call was in fact made, and therefore as the money was not due, the judgment is not a bar. But the case stated admits that the suit was for 22 dollars 50 cents, the amount of defendant's stock called for up to that time. And the record of the magistrate is, that judgment was given for the defendant, "it not appearing that a call had been made." This judgment became absolute by the discontinuance after the appeal, and was a bar to so much of the plaintiff's present demand as was embraced within it.

Judgment reversed, and a *venire de novo* awarded.

(*a*) The same principle is settled in the Lehigh Bridge Company *v.* The Lehigh Navigation Company, 4 *Rawle* 9.