PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-1892 & 15-2521
_____

UNITED STATES OF AMERICA

v.

YLLI GJELI, a/k/a Willie

Ylli Gjeli,
            Appellant in No. 15-1892

FATMIR MUSTAFARAJ, a/k/a Tony

Fatmir Mustafaraj,
            Appellant in No. 15-2521
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 2-13-cr-00421-001 & 002
District Judge:  Honorable William H. Yohn, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
June 12, 2017

Before:   JORDAN, KRAUSE, *Circuit Judges* and
                STEARNS[*], *District Judge.*

(Opinion Filed: August 11, 2017)
_____

Edson A. Bostic
Tieffa N. Harper
Office of the Federal Public Defender
For the District of Delaware
800 King Street, Suite 200
Wilmington, DE 19801
        Attorneys for Appellant Ylli Gjeli

Alison Brill
Office of the Federal Public Defender
For the District of New Jersey
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

Richard Coughlin
For the District of New Jersey
Office of Federal Public Defender
800-840 Cooper Street
Suite 350
Camden, NJ 08102

_____

        [*] Honorable Richard G. Stearns, United States District
Court Judge for the District of Massachusetts, sitting by
designation.

Eugene P. Tinari
Law Offices of Eugene P. Tinari
1313 Race Street
Philadelphia, PA 19107
        Attorneys for Appellant Fatmir Mustafaraj

Louis D. Lappen
Robert A. Zauzmer
Salvatore L. Astolfi
Katherine E. Driscoll
Jerome M. Maiatico
Office of the United States Attorney
For the Eastern District of Pennsylvania
615 Chestnut Street, Ste. 1250
Philadelphia, PA 19106
        Attorneys for Appellee

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Ylli Gjeli and Fatmir Mustafaraj were tried together and convicted of a number of racketeering-related offenses in connection with a loan sharking and illegal gambling operation in Philadelphia. The District Court entered preliminary orders of forfeiture making both men jointly and severally liable for more than $5 million of the proceeds from the criminal operation. Gjeli and Mustafaraj appeal the forfeiture orders and their sentences. During the pendency of this appeal, the Supreme Court issued its opinion in

3

*Honeycutt v. United States*, reviewing one of the forfeiture statutes at issue here and holding that joint and several liability is unauthorized. 137 S. Ct. 1626, 1630 (2017). In light of that holding, we will remand this case for the District Court to reconsider the forfeiture orders. As to all other issues on appeal, we will affirm.

## I.      Background

In August 2013, a grand jury in the Eastern District of Pennsylvania returned a 26-count indictment against nine co-defendants, including Gjeli and Mustafaraj. The indictment described a violent criminal enterprise, in operation since at least 2002, that made money for its members through "loan sharking, extortion, illegal gambling, and the collection of unlawful debts[.]"[1]  (App. at 106.) Gjeli was a "leader and 'boss' of the enterprise who directed other members in the loan sharking activities and illegal gambling business." (App. at 110.) Mustafaraj was a "leader and 'muscle' in the enterprise who regularly assisted … Gjeli and directed other members" of the enterprise. (*Id.*)

---

[1] The loan sharking portion of the enterprise worked by lending large sums of cash at extreme interest rates, the majority of which were between 104% and 156% per year, but which were sometimes as high as 395% per year. The defendants would exert pressure on loan recipients who were unable to make payments, including by visiting their homes and places of employment, and threatening violence. The gambling business involved sports betting and significantly overlapped with the loan sharking, as the gamblers were often in need of funds.

The indictment charged all of the co-defendants with being members of a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Gjeli and Mustafaraj were also charged with a number of other crimes stemming from the enterprise. Five of the defendants eventually pled guilty, and four, including Gjeli and Mustafaraj, went to trial. The jury found Gjeli guilty on ten counts and Mustafaraj guilty on twelve.[2] The jury did not, however, convict on all counts. In particular, it acquitted Gjeli and Mustafaraj of making an extortionate extension of credit, which was charged in Count 13, and possession of a firearm in furtherance of a crime of

---

[2] Gjeli was found guilty of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count 1); collection of unlawful debt, in violation of 18 U.S.C. § 1962(c) (Counts 4, 10, 11); making extortionate extensions of credit, in violation of 18 U.S.C. § 892 (Counts 14 to 16); collection of extensions of credit by extortionate means, in violation of 18 U.S.C. § 894(a)(1) (Counts 23 and 24); and operating an illegal gambling business, in violation of 18 U.S.C. § 1955(a) (Count 25).

Mustafaraj was found guilty of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count 1); collection of unlawful debt, in violation of 18 U.S.C. § 1962(c) (Counts 3, 7, 9, 11, 12); making extortionate extensions of credit, in violation of 18 U.S.C. § 892 (Counts 14 to 16); collection of extensions of credit by extortionate means, in violation of 18 U.S.C. § 894(a)(1) (Counts 22 and 24); and operating an illegal gambling business, in violation of 18 U.S.C. § 1955(a) (Count 25).

violence, which was charged in Count 26.[3]  Those specific counts were based on an incident involving Anthony Rodi, a loan recipient with a gambling problem.  Rodi testified at trial that, in January 2011, when he asked Mustafaraj and Gjeli for money, they wielded an axe and threatened that higher-ups in their organization in New York would cut Rodi's arm off if he was unable to pay back the loan.  Rodi said that Gjeli then instructed Mustafaraj to "go and get it" (App. at 2445), and Mustafaraj left and returned with a firearm that Gjeli pointed at Rodi's head.  A co-defendant, George Markakis, who ran the sports betting side of the RICO enterprise, testified that he had expressed concern about Rodi's mounting debts from football betting in 2012, but that Mustafaraj had assured him "they had [Rodi] under control and not to worry about it." (App. at 3589.)  Markakis told the jury that Mustafaraj explained that he (Mustafaraj) and Gjeli had "scared" Rodi with "a machete and a pistol."  (App. at 3589.)

At the sentencing hearings for each man, the District Court announced its conclusions under the United States Sentencing Guidelines, after working through calculations involving the grouping of offenses.  The imprisonment range for both turned out to be 135 to 168 months.  Gjeli was sentenced to 168 months and Mustafaraj to 147.

The Indictment had contained notices of forfeiture for the charges of engaging in a racketeering conspiracy, making extortionate credit transactions, illegal gambling, and possessing a firearm in furtherance of a crime of violence. Pursuant to Rule 32.2 of the Federal Rules of Criminal

---

[3] Gjeli was also acquitted on Count 18, the collection of an extension of credit by extortionate means.

Procedure, those notices alerted Gjeli and Mustafaraj that the government could seek forfeiture at sentencing in the event of conviction on those counts. Following the verdicts, the government filed motions seeking preliminary orders of forfeiture. The District Court granted those motions, and neither Gjeli nor Mustafaraj objected to the entry of the preliminary orders. At each man's sentencing hearing, the District Court made statements regarding forfeiture, but the judgments themselves did not reference the forfeiture orders.

## II.    Discussion[4]

The Defendants raise three issues on appeal. First, they dispute the application of a dangerous weapon enhancement that was used to calculate their Guidelines range. Second, they argue that the calculation of their base offense level under the Guidelines' grouping provisions was incorrect. Finally, they raise a number of challenges to the District Court's entry of the forfeiture orders. We address each of those issues in turn.

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

A.  *Application of Sentencing Enhancement*[5]

Gjeli and Mustafaraj argue that the District Court violated the Constitution by considering at sentencing their use of an axe to threaten Anthony Rodi.  In their view, making that incident the basis of a dangerous weapons enhancement to their sentencing range was contrary to the Sixth Amendment.[6]  They say that the use of the axe constitutes acquitted conduct because it was one of the acts that formed the basis of Count 26, of which they were found not guilty.[7]  Citing *Apprendi v. New Jersey*, 530 U.S. 466

---

[5] Our review of the Defendants' Sixth Amendment challenge to the imposition of the sentencing enhancement is plenary, as it is a question of law.  *United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001).

[6] Specifically, the Court applied the sentencing enhancement delineated in United States Sentencing Guidelines § 2E2.1(b)(1)(B), which states that: "if a dangerous weapon (including a firearm) was … used, increase [the offense level] by **4** levels[.]"

[7] Count 26 charges Mustafaraj and Gjeli with having: knowingly possessed a firearm in furtherance of a crime of violence for which the defendants may be prosecuted in a court of the United States, that is, Count One of this indictment, which charged Racketeering Conspiracy, in that the conspiracy involved Making Extortionate Extensions of Credit, in violation of Title 18, United States Code, Section 892, and Collections of Extensions of Credit By

(2000), they contend that relying on acquitted conduct violates the Sixth Amendment right to trial by jury. Their argument is unavailing.

In *Apprendi*, the Supreme Court held that the Sixth Amendment guarantee of a right to trial by jury means that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court has applied *Apprendi* numerous times, in each case concluding "that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed … without the challenged factual finding." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (citing *Apprendi*, 530 U.S. at 491-97, and *Ring v. Arizona*, 536 U.S. 584, 603-09 (2002)). What has come to be called an *Apprendi* violation thus occurs whenever an enhanced sentence exceeds the statutory maximum that could have been imposed without application of the enhancement. *See Blakely*, 542 U.S. at 303 ("Our precedents make clear … that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely

---

> Extortionate Means, in violation of Title 18, United States Code, Section 894(a)(1); and Count Thirteen of this indictment, which charged Making an Extortionate Extension of Credit, in violation of Title 18, United States Code, Sections 894(a)(1) and 2, to Customer #8, a person known to the grand jury; and the defendants brandished that firearm.

(App. at 178.)

9

on the basis of the facts reflected in the jury verdict or admitted by the defendant." (emphasis omitted)).

No *Apprendi* error occurred here.  Neither Gjeli nor Mustafaraj complain that the sentences they received went beyond the statutory maximum to which they were exposed, and clearly their sentences do not.[8]  Their argument, rather, is

---

[8] In light of its holding in *Apprendi*, the Supreme Court in *United States v. Booker* recognized that sentencing enhancements that increase an applicable Guidelines range would likewise offend the Sixth Amendment if the Guidelines were treated as mandatory in sentencing decisions.  543 U.S. 220, 232-33 (2005).  The Court therefore held that the Guidelines are not mandatory and instead must be considered advisory.  *Id.* at 245.  We have explained that, since *Booker*, "the final Guidelines range does not bind the district court, but merely serves as one of a number of factors to be considered in fashioning the ultimate sentence."  *United States v. Grier*, 475 F.3d 556, 564-65 (3d Cir. 2007) (en banc) (citing *Booker*, 543 U.S. at 259-60).  And the facts found by the district court in imposing a sentencing enhancement do not "have the effect of increasing the maximum punishment to which the defendant is exposed."  *Id.* (citing *Apprendi*, 530 U.S. at 489-94).  Therefore, unless the sentence exceeded the statutory maximum chosen by Congress in the United States Code, the sentence is not unconstitutional.  *Id.*; *see United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013) (recognizing that the "Sixth Amendment right to a jury trial is not implicated by fact finding during a sentencing proceeding unless those facts increase the statutory maximum punishment" (citing *Apprendi*, 530 U.S. at 490)).

10

that the District Court's application of the dangerous weapon enhancement for use of the axe was a violation of their Sixth Amendment rights because it relied on acquitted conduct. But that argument ignores that they were never charged with a crime for which the use of an axe was an element. The only count against Gjeli and Mustafaraj that has as an element anything to do with a weapon was Count 26, which charged them with possession of a firearm in furtherance of a crime of violence.[9]  True enough, they were acquitted on that charge, and it is also true that the alleged firearm crime happened to have occurred during the same incident in which the axe was used.  But that does not mean that the acquittal was about the

---

[9] Neither Count 13, of which Gjeli and Mustafaraj were acquitted, nor Count 18, of which Gjeli was acquitted (Mustafaraj was not charged in Count 18), had use of weapons as an element.  The charge in Count 13, making an extortionate extension of credit, requires that the defendant made "any extortionate extension of credit, or conspire[d] to do so."  18 U.S.C. § 892(a); *see United States v. Giampa*, 758 F.2d 928, 933 (3d Cir. 1985) (noting that an extortionate extension of credit in turn requires "an 'understanding of the creditor and debtor at the time [the extension of credit] is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm'" (quoting 18 U.S.C. § 891(6)) (alteration in *Giampa*)).  The charge in Count 18, collection of credit by extortionate means, has the following elements: (a) "knowingly participat[ing] in any way," (b) "in the use of any extortionate means[,]" (c) "to collect or attempt to collect any extension of credit, or to punish any person for the nonrepayment thereof[.]"  18 U.S.C. § 894(a).

11

axe. It was not, because the charge itself was not about the axe. In short, use of the axe was never charged and therefore did not constitute conduct of which they were acquitted.

Even if the District Court in its discretion had relied on acquitted conduct, though, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Ciavarella*, 716 F.3d 705, 735-36 (3d Cir. 2013) (quoting *United States v. Watts,* 519 U.S. 148, 157 (1997)). That is because "the jury cannot be said to have necessarily rejected any facts when it returns a general verdict of not guilty." *Watts*, 519 U.S. at 155. The District Court here had ample basis for deciding by a preponderance of the evidence that the dangerous weapon enhancement should apply, given that "the testimony [by Mr. Rodi] with reference to the [axe] … was corroborated by Mr. Markakis." (App. at 5243-44.)

"We find no clear error in the District Court's factual findings because there is sufficient evidence in the record to support the finding" that a dangerous weapon, namely the axe, was used.[10] *Ciavarella*, 716 F.3d at 736. Therefore, the

---

[10] The Guidelines define a dangerous weapon, in part, as "an instrument capable of inflicting death or serious bodily injury[.]" U.S.S.G. § 1B1.1, cmt. (n.1(D)). An axe is undoubtedly such an instrument, and the District Court determined that by a preponderance of the evidence. (*See* App. at 5244 ("Obviously, the [axe] is such a dangerous weapon, and [the] use of it to threaten the witness calls for the application of the four-point enhancement.").)

12

argument that the District Court's application of the dangerous weapon enhancement violated the Sixth Amendment fails.

### B. *RICO Grouping under the Guidelines*

The Sentencing Guidelines lay out a method for determining a numerical offense level for federal crimes, which, when combined with a defendant's criminal history score, yield a sentencing range. The base offense level for a RICO conspiracy is the greater of either 19 or the level applicable to the underlying racketeering activity. *See* U.S.S.G. § 2E1.1. To calculate the latter number, we must launch on a journey through the Guidelines' labyrinthine provisions for grouping offenses. A sentencing court "treat[s] each underlying offense as if contained in a separate count of conviction ... ." *Id*. § 2E1.1, cmt. (n.1). After identifying the underlying racketeering offenses the court then groups together closely related ones, in accordance with Chapter 3 of the Guidelines. *Id*. § 3D1.2. Once those offenses are grouped, the court assigns a base offense level to each "Group" based on the nature of the grouping and of the offenses grouped. *Id*. § 3D1.3. In assigning the base offense level to each Group, the court looks to the highest offense level of the underlying offenses in that Group. *Id*. § 3D1.3.

After the offense level has been determined for each Group, the sentencing court must then determine the combined offense level of all the Groups. To do so, the court "tak[es] the offense level applicable to the Group with the highest offense level and increas[es] that offense level by the amount indicated" in a table included in the Guidelines. *Id*. § 3D1.4. That table requires the court to assign "Units" to

13

each Group. *Id.* One Unit is assigned to the Group with the highest offense level. *Id.* § 3D1.4(a). Then, one additional Unit is added "for each Group that is equally serious or from 1 to 4 levels less serious" than the Group with the highest offense level. *Id.* And one-half Unit is added for "any Group that is 5 to 8 levels less serious than the Group with the highest offense level." *Id.* § 3D1.4(b). "[A]ny Group that is 9 or more levels less serious than the Group with the highest offense level" is to be disregarded. *Id.* § 3D1.4(c). Based on the total number of Units, the base offense level can be increased up to a maximum of 5 levels, if the sum of the Units is 5 or greater. *Id.* § 3D1.4.

For both Gjeli and Mustafaraj, the highest offense level applicable to the groupings was 28, and the groupings' Units aggregated to 8.5 Units. So a 5 level increase in offense level was added to 28, making the total offense level for each man 33.

Mustafaraj makes two arguments with respect to the District Court's calculation of his offense level. First, he claims that the District Court erred by declining to decide a "contested issue" (Mustafaraj Br. at 36), namely whether he had participated in criminal acts that were designated as Groups 10, 11, and 12 in the calculation. Second, he argues that, even if he had participated in those crimes, the District Court erred by including Groups 10, 11, and 12 in the calculation at all. Gjeli joins that second argument. Our review of the District Court's calculations is plenary.[11] *See*

---

[11] Gjeli did not waive that second argument and therefore our review is plenary as to the alleged error affecting him, but Mustafaraj's counsel (rightly) agreed with

14

*United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) ("[T]his Court will … exercise plenary review over a district court's interpretation of the Guidelines.").

As to the first argument, Mustafaraj says that the District Court should have ruled on the exclusion of the contested Groups pursuant to Federal Rule of Criminal Procedure 32.  That Rule requires a sentencing court to "rule on [any disputed portion of a presentence report] or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]"  Fed. R. Crim. P. 32(i)(3)(B).  The Rule is "strictly enforced[,]"  *United States v. Electrodyne Sys. Corp.*, 147 F.3d 250, 255 (3d Cir. 1998), and the District Court here did as instructed: it found that the precise objection "[would] not affect sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  That satisfies Rule 32.  *Cf. United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002) (declining to find a Rule 32 violation where a party raised his objections for the first time at sentencing and the sentencing court ruled on them on the record).

---

the District Court that it was not necessary to rule on the inclusion of Groups 10, 11, and 12 in the sentencing calculation.  His challenges therefore need only be reviewed for plain error.  *See United States v. Flores-Mejia*, 759 F.3d 253, 254-55 (3d Cir. 2014) (en banc) (reviewing unpreserved procedural challenges to a sentence for plain error).  As the District Court's rulings on these issues survive plenary review, however, it is clear that they do not constitute plain error.

Mustafaraj's second argument, the one joined by Gjeli, is that the District Court should have excluded the contested Groups altogether. Even if that argument had merit, however, it is irrelevant. As the District Court pointed out, excluding the contested Groups would not have affected the resulting Guidelines range for either man because, even without them, each was subject to the five-level increase based on the remaining Groups affecting his sentence. (*See* App. at 5097 (recognizing that even if the District Court excluded the Groups "that would only delete two units, so [the defendant] would still have 6.5 units, and therefore, there would be a five-point enhancement").) Therefore, the Court's conclusion that ruling on the matter was unnecessary was sufficient. Fed. R. Crim. P. 32(i)(3)(B). Furthermore, any error in this regard – and we are not implying there was any – was harmless, as it did not affect either man's sentence.[12] *See*

---

[12] Mustafaraj also argues that the District Court erred in failing to strike a reference to guns in paragraph 178 of his Pre-Sentence Report. The government agrees that that was a clerical error but notes that it can be resolved at any time by motion to the District Court through Federal Rule of Criminal Procedure 36. Rule 36 states that "the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. Because we agree that any clerical error is properly the subject of a Rule 36 motion to the District Court, *United States v. Bennett*, 423 F.3d 271, 277 (3d Cir. 2005), we do not address it on appeal.

Mustafaraj's additional argument that his Bureau of Prisons' classification was potentially affected by the PSR is irrelevant to our review of the sentence imposed. *Williams v. United States*, 503 U.S. 193, 202-03 (1992) ("[R]emand is

Fed. R. Crim. P. 52(a) ("Any error ... that does not affect substantial rights must be disregarded."). We thus reject Mustafaraj and Gjeli's challenges to the calculations associated with the RICO conspiracy.

C.    *Forfeiture*

Gjeli and Mustafaraj argue that the District Court never announced the amount of forfeiture at sentencing and failed to include a final order of forfeiture in the judgment, as required by Federal Rule of Criminal Procedure 32.2(b)(4)(B).[13] The government takes a different view of the

---

required only if *the sentence* was imposed as a result of an incorrect application of the Guidelines." (internal quotation marks omitted) (emphasis added)); *see also United States v. Wilken*, 498 F.3d 1160, 1170 n.9 (10th Cir. 2007) ("Precedent is clear … that we determine whether a sentencing error is harmless with reference only to the sentence imposed." (citing *Williams*)).

[13] Federal Rule of Criminal Procedure 32.2(b)(4)(B) governs "Notice [of Forfeiture] and Inclusion in the Judgment." It states that:

> The court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The court must also include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36.

record and contends that the District Court did ensure that both men knew of the forfeiture at sentencing, although the government does agree that the Court failed to include the final order of forfeiture in the judgment. Indeed, a review of the judgments confirms that a clerical error occurred – the forfeiture orders are not included – so we must at least remand for the District Court to correct that error under Federal Rule of Criminal Procedure 36.[14]

In addition to that problem, the parties agree that forfeiture was imposed jointly and severally and that such liability is no longer permissible in light of *Honeycutt v. United States*. 137 S. Ct. 1626 (2017). Neither Gjeli nor Mustafaraj objected to joint and several liability, and the District Court quite rightly relied on our then-controlling decision in *United States v. Pitt*, 193 F.3d 751 (3d Cir. 1999), in imposing that form of liability.[15] That, however, was

---

[14] *See* n.12, *supra*, for the relevant text of Rule 36.

[15] Because Gjeli and Mustafaraj did not object to the preliminary orders of forfeiture below, those claims would ordinarily be subject to plain error review. *United States v. Olano*, 507 U.S. 725, 735 (1993). Here, however, there was an intervening change in the law that provided a basis for appeal that did not exist at the time the District Court ruled on the preliminary orders of forfeiture. *See Hamling v. United States*, 418 U.S. 87, 102 (1974) ("[A] change in the law occurring after a relevant event in a case will be given effect while the case is on direct review."); *see also McLaughlin v. Wohlgemuth*, 535 F.2d 251, 254 (3d Cir. 1976) (vacating and remanding for district court to reconsider opinion in light of intervening law).

before the Supreme Court decided *Honeycutt*. In *Honeycutt*, the text and structure of 21 U.S.C. § 853 led the Court to conclude that a defendant cannot "be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." 137 S. Ct. at 1630. That holding effectively overturns our decision in *Pitt*. *Id.* at 1631 n.1.

The statute at issue in *Honeycutt* was the basis for forfeiture for certain counts of conviction in this case, and therefore obviously affects the forfeiture ruling here. And while the forfeiture based on other counts of conviction was rooted in a different criminal forfeiture statute, 18 U.S.C. § 1963, and in a civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), a review of the text and structure of those statutes reveals that they are substantially the same as the one under consideration in *Honeycutt*.[16] We thus see no reason

---

[16] A review of the applicable forfeiture statutes demonstrates the substantial equivalency in both structure and text.

18 U.S.C. § 1963(a), which pertains to the racketeering conspiracy (Count 1), states that:

> Whoever violates any provision of section 1962 of this chapter … shall forfeit to the United States, irrespective of any provision of State law …
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

why the holding in *Honeycutt* does not apply with equal force to those statutes. Joint and several liability therefore cannot be imposed in these cases. Instead, "[f]orfeiture … is limited to property [each] defendant himself actually acquired as the result of the crime." *Honeycutt*, 137 S. Ct. at 1635. We will

---

18 U.S.C. § 981(a)(1), which pertains to extortionate extensions of credit (Counts 13-24) and illegal gambling (Count 25), states that:

> The following property is subject to forfeiture to the United States:
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [certain sections] of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

21 U.S.C. § 853(a), which became relevant through the government's desire to seek substitute property pursuant to 21 U.S.C. § 853(p) for each count for which forfeiture was sought, *United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006), states that:

> Any person convicted of a violation of this subchapter … shall forfeit to the United States, irrespective of any provision of State law--
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation[.]

therefore remand for the District Court to reconsider its forfeiture rulings and include any final orders of forfeiture in the final written judgment as to each defendant.

## III. Conclusion

For the foregoing reasons, we will affirm in part and vacate and remand in part.