NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-2638 & 18-3017
_____

UNITED STATES OF AMERICA

v.

RENEE TARTAGLIONE,
                                                Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-15-cr-00491-001)
District Judge:  Honorable Joel H. Slomsky
_____

Submitted under Third Circuit LAR 34.1(a)
March 11, 2020

Before:  McKEE, AMBRO, and PHIPPS, *Circuit Judges*.

(Filed: June 9, 2020)

_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

    After a nineteen-day trial in federal court, a jury convicted Renee Tartaglione of

53 fraud-related counts for her role in defrauding a community health clinic and for

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

underreporting her resulting income. The jury heard evidence that Tartaglione, who was the President of the Board of the Juniata Community Mental Health Clinic (the "Clinic"), engaged in numerous instances of self-dealing and misappropriation. At trial, the Chief Deputy Attorney General of Pennsylvania, Mark Pacella, testified as an expert witness – over Tartaglione's objection. He explained the legal and regulatory framework for Pennsylvania charitable nonprofit corporations, including the fiduciary duties imposed on board members and directors of such organizations. After the jury returned its verdict, the District Court sentenced Tartaglione to 82 months' imprisonment, three years of supervised release, a special assessment of $5,300, and forfeiture of over $2.4 million. The sentence also compelled restitution of over $2.39 million, split between the Internal Revenue Service ($263,567) and the Pennsylvania Attorney General's Office ($2,076,124), as a successor in interest to the Clinic, which by that time was in dissolution. The District Court had jurisdiction to impose that judgment and sentence, *see* 18 U.S.C. § 3231, and Tartaglione now challenges the admissibility of Pacella's testimony, the forfeiture amount, and the restitution awards. In exercising appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), we will affirm the judgment and sentence as modified.

A

Tartaglione first argues that permitting Pacella to testify as an expert about matters of law and the Clinic's charitable status was irrelevant, prejudicial, and/or confusing. By contrast, the District Court determined that Pacella's testimony was relevant and not unfairly prejudicial. And to prevent confusion, the District Court entered and enforced an

2

order limiting Pacella's testimony to background topics. The District Court did not abuse its discretion or otherwise err in those rulings.

Expert testimony is not permitted on governing law because the articulation of governing law is within the sole province of the judge.[1] But sometimes an understanding of non-governing law may "help the trier of fact to understand the evidence." Fed. R. Evid. 702(a); *see also* Fed. R. Crim. P. 26.1 (requiring written notice of an issue of foreign law in a criminal case). Consistent with that exception, this Circuit has recognized that qualified experts may testify about not only business customs and practices[2] but also applicable legal duties, especially when those non-governing laws help explain fraudulent intent. *See United States v. Fumo*, 655 F.3d 288, 302-03 (3d Cir. 2011) (explaining that, to prove fraudulent intent, "expert testimony may also concern ethics rules and law related to public officials and government contractors"). The expert

---

[1] *See Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (explaining that "the District Court must ensure that an expert does not testify as to the governing law of the case . . . because it would usurp the District Court's pivotal role in explaining the law to the jury"); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) (explaining that "it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury").

[2] *See Berckeley*, 455 F.3d at 218 (concluding that the District Court did not abuse its discretion by allowing testimony on the "customs and business practices in the securities industry" and noting that the expert could not testify about compliance with "legal duties that arose under the federal securities laws"); *Leo*, 941 F.2d at 197 (holding that the District Court did not abuse its discretion by admitting expert testimony about "customs and practices within the defense industry"); *First Nat'l State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (upholding the admission of expert testimony "on the custom in the banking industry to facilitate [the jury's determination of a fact]").

testimony permitted by the District Court meets both requirements for that exception: it did not concern governing law, and it helped the jury.

First, Pacella's testimony did not concern governing law. He testified about the Clinic's articles of incorporation and its organization as a Pennsylvania charitable nonprofit corporation. He also explained the fiduciary duties of care and loyalty applicable to directors and officers of such organizations under Pennsylvania law. But those topics did not address the law governing this case because Tartaglione was not charged with violating Pennsylvania law. In fact, Pacella's testimony made clear that breach of those duties of care and loyalty was not a crime, and consistent with the District Court's order, he did not opine on whether she had violated those duties.

Second, Pacella's testimony was offered to assist the jury in gauging whether, in light of those duties, Tartaglione intended to commit fraud. Background testimony, for instance about scientific principles,[3] is permissible to contextualize relevant facts. *See* Fed. R. Evid. 702 ("A witness who is qualified . . . may testify in the form of an opinion *or otherwise . . . .*" (emphasis added)). Thus, the District Court did not abuse its discretion by allowing testimony on background non-governing legal standards to contextualize whether Tartaglione acted with an intent to defraud the Clinic. *See Fumo*, 655 F.3d at 302-03 (permitting testimony on ethics rules and non-governing law).

---

[3] *See* Fed. R. Evid. 702 Advisory Committee Notes ("Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific *or other principles relevant to the case*, leaving the trier of fact to apply them to the facts." (emphasis added)).

B

Tartaglione next challenges the amount of the civil forfeiture award. Civil forfeiture is permitted only for property derived from proceeds traceable to illegal conduct. *See* 18 U.S.C. § 981(a)(1)(C) (allowing civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation" of listed federal criminal offenses); *see also Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 196 (3d Cir. 2017). And for the first time on appeal, Tartaglione argues that a portion of the forfeiture ($959,100) was illegal because she never possessed those funds. Instead, as she asserts, those funds passed directly from the Clinic to third-party contractors for improvements to a building that Tartaglione owned through a limited liability corporation.

But the District Court did not commit any error, much less plain error, in its forfeiture order. *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (articulating the plain error standard (citing *United States v. Olano*, 507 U.S. 725, 732-36 (1993))); *United States v. Quinn*, 728 F.3d 243, 261 (3d Cir. 2013) (same). Tartaglione premises her argument on recent cases involving the apportionment of forfeiture awards among co-conspirators, who are not subject to joint and several liability. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1632-33 (2017) (holding that the criminal forfeiture statute, 21 U.S.C. § 853, does not impose joint and several liability); *see also United States v. Gjeli*, 867 F.3d 418, 427-28 (3d Cir. 2017) (holding that the civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), does not impose joint and several liability). In that context, the Supreme Court held that co-conspirator liability for forfeiture extended only to property

5

obtained "directly or indirectly" from criminal activity and that a key inquiry was whether the co-conspirator personally benefitted from the conspiracy. *Honeycutt*, 137 S. Ct. at 1635. But the issue here does not concern the apportionment of liability among co-conspirators, rather the fact of liability.

Even if applicable in this context, the co-conspirator liability cases cited by Tartaglione would provide her no assistance. At its apogee, Tartaglione's argument is a contention that she did not *directly* obtain property derived from proceeds. *See* Appellant's Br. at 28 ("Th[e District Court's forfeiture] ruling was error, because the funds were paid to third parties that did not deliver them to Ms. Tartaglione or the entity she solely owned."). But by routing the proceeds of fraud to third-party contractors to make improvements to property that she owned, Tartaglione *indirectly* obtained benefits from the crime, and that would still suffice to subject her to forfeiture liability under the standard for co-conspirators. *See Honeycutt*, 137 S. Ct. at 1635.

More fundamentally, the District Court ordered forfeiture under the civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), and not under the criminal forfeiture statute, 21 U.S.C. § 853. While those two statutes share similar text and structure,[4] the civil forfeiture statute by its plain text, *see* 18 U.S.C. § 981(a)(1)(C), does not condition forfeiture liability upon obtaining – either directly or indirectly – property from the proceeds of the

---

[4] *See Gjeli*, 867 F.3d at 427 (determining that the text and structure of the civil forfeiture statute were "substantially the same" as the criminal forfeiture statute).

criminal activity.[5]  (That property, could for instance, be shunted to other persons as gifts and still result in civil forfeiture liability).  For that reason as well, no infirmity exists in the District Court's order compelling Tartaglione to forfeit the disputed sum.

C

Tartaglione also challenges the two components of the District Court's $2,339,691 restitution order: (1) the award of $263,567 to the Internal Revenue Service for tax deficiencies, and (2) the award of $2,076,124 to the Pennsylvania Attorney General's Office in trust as successor in interest to the Clinic.

1.     The Restitution Ordered to the IRS

Tartaglione argues now, as she did at her sentencing, that the jury's general verdict could not sustain the amount of restitution to the IRS.  But the jury's charge was to determine whether the evidence established the elements of her charged criminal offenses.  *See United States v. Grier*, 475 F.3d 556, 567 (3d Cir. 2007) (*en banc*).[6]  And

---

[5] *Compare* 18 U.S.C. § 981(a)(1)(C) (subjecting to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" a listing of federal crimes), *with* 21 U.S.C. § 853(a)(1) (requiring forfeiture of "any property constituting, or derived from, any proceeds the person *obtained, directly or indirectly*, as the result of such violation" (emphasis added)), *and* 18 U.S.C. § 981(a)(1)(B) (subjecting to forfeiture "[a]ny property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds *obtained directly or indirectly* from an offense against a foreign nation, or any property used to facilitate such an offense" subject to three conditions (emphasis added)).

[6] *Cf. Alleyne v. United States*, 570 U.S. 99, 103 (2013) (holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

here, the amount of restitution is not an element of any of the charges against Tartaglione. Thus, that issue was not within the province of the jury, and the District Court did not commit clear error by determining the amount of the restitution at the sentencing hearing.

On appeal, Tartaglione also disputes the calculation of the restitution award. She did not, however, raise that argument before the District Court, and she cannot clear the plain error standard on appeal. Several pieces of evidence support the amount of the award: the exhibits at sentencing, the un-objected-to presentence investigation report, as well as the background trial testimony about tax deficiency calculations by an IRS agent. On its own initiative, the Government points out that the restitution amount incorrectly included liability of $6,113 for tax year 2011, and it does not object to the reduction of the restitution award to the IRS by that amount. We will affirm the restitution award to the IRS as modified by that reduction. *See* 28 U.S.C. § 2106.

2. The Restitution Award to the Pennsylvania Attorney General's Office as Successor in Interest to the Clinic

Tartaglione also challenges the District Court's restitution order of $2,076,124 to the Pennsylvania Attorney General's Office. At the time of sentencing, the Clinic was not well-poised to receive a restitution award: it was no longer under contract to provide services, it had ceased operations, and it was in dissolution. In ordering restitution to the Pennsylvania Attorney General's Office, instead of the Clinic, the District Court engaged in a multi-step analysis. It first concluded that the people whom the Clinic intended to serve were the victims of Tartaglione's criminal conduct. From there, the District Court contemplated that a successor clinic would provide services to benefit those victims. Yet

8

without an existing clinic to do so, the District Court ordered Tartaglione to pay restitution to the Pennsylvania Attorney General's Office to hold in trust for another nonprofit organization with a similar charitable purpose.

Tartaglione argues that the District Court committed five errors in awarding that restitution. Her first three challenges relate to the District Court's determination that the Clinic's intended beneficiaries qualify as victims under the Mandatory Victims Restitution Act. Specifically, she asserts that (i) a class of unidentified persons cannot be victims, (ii) the District Court failed to determine pecuniary losses for each of those persons, and (iii) the award constitutes unauthorized "community restitution." Tartaglione's other two arguments dispute payment of restitution to Pennsylvania Attorney General's Office. She contends that (iv) it was not a victim and therefore cannot receive funds, and (v) the District Court improperly delegated the judicial function of identifying victims and awarding restitution to that office.

Several of Tartaglione's arguments have traction, but even so, she does not demonstrate that succeeding on any of them would affect the restitution award. And therefore, the award may be affirmed under the harmless error standard. *See* 28 U.S.C. § 2111; Fed. R. Crim. P. 52(a); *Kotteakos v. United States*, 328 U.S. 750, 764 (1946) (holding that, when determining whether an error is harmless, an "appellate court can[not] escape altogether taking account of the [error's affect on the] outcome," and that the District Court's decision will stand if "the error . . . had but very slight effect" on the judgment); *United States v. Dennis*, 826 F.3d 683, 693 (3d Cir. 2016) (explaining that on

9

harmless-error review, an appellate court should not reverse if it "believes it is highly probable that the error did not affect the judgment" (citation omitted)).[7]

Here, the record supports the restitution award to the Pennsylvania Attorney General's Office as a trustee. Although the District Court did not identify the Clinic as a victim, the record demonstrates that the Clinic was a victim of Tartaglione's crimes because those fraud offenses, *see* 18 U.S.C. § 3663A(c)(1)(A)(ii), caused pecuniary loss to the Clinic in the amount of the restitution award, *see id.* § 3663A(c)(1)(B). Likewise from the record, while in dissolution, the Clinic was still controlled by Tartaglione, her husband, and her puppet Board members. Due to that conflict, the Clinic lacked the capacity to receive the restitution award. *See* 15 Pa. Cons. Stat. Ann. § 5501 ("[A] nonprofit corporation shall have the legal capacity of natural persons to act."); 20 Pa. Cons. Stat. Ann. § 5501 (defining an "incapacitated person" as a person whose ability "to manage [] financial resources" is seriously impaired).[8] Because the Clinic was an

---

[7] *See also United States v. Bogart*, 576 F.3d 565, 573 (6th Cir. 2009) (applying harmless error review to procedural aspect of restitution); *United States v. Marks*, 530 F.3d 799, 812 (9th Cir. 2008) ("[B]ecause the procedural requirements of [restitution statutes] were designed to protect victims, not defendants, the failure to comply with them is harmless error. . . ." (citation omitted)); *see generally United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990) (holding that "the principle of harmless-error analysis . . . is the governing precept in most matters of criminal procedure"); 3B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 854 (4th ed. Apr. 2020 update) ("[The Supreme Court] has suggested that . . . all violations of the Federal Rules of Criminal Procedure are presumptively subject to harmless error review.").

[8] *See also In re Am. Biomaterials Corp.*, 954 F.2d 919, 921-22 (3d Cir. 1992) (affirming the finding that two officers' embezzlement from the corporation "incapacitated the corporation"); *Rose v. Roseburg & Mercer Tpk. Co.*, 3 Watts 46, 48 (Pa. 1834) ("[C]orporations [that] have fallen into [dissolution ] . . . are incapacitated . . . .").

10

incapacitated victim, restitution could be awarded to "any other person appointed as suitable by the court." 18 U.S.C. § 3663A(a)(2). And here, the Pennsylvania Attorney General's Office was a suitable recipient due to its role in overseeing charitable nonprofit corporations.[9] For these reasons, regardless of the merit of Tartaglione's challenges, the record supports the District Court's outcome: a restitution award to the Pennsylvania Attorney General's Office as trustee.

\* \* \*

For all these reasons, we will affirm the judgment of the District Court as modified by the reduction in the restitution awarded to the IRS by $6,113.

---

[9] *See Kane v. New Founds., Inc.*, 182 A.3d 1059, 1070-72 (Pa. Commw. Ct. 2018) ("Because charities serve an indefinite number of people, the Commonwealth, through the Attorney General, is responsible for the public supervision of charities . . . [and] [b]ecause all of a charitable nonprofit's assets are committed to a charitable purpose, when a charitable nonprofit ceases business, then any remaining funds or property must be given to a charitable nonprofit with a similar charitable purpose.") (citations omitted); *Corbett v. Citizens All. for Better Neighborhoods, Inc.*, 983 A.2d 1274, 1277 (Pa. Commw. Ct. 2009) ("It is the well-settled law of the Commonwealth that the Attorney General is responsible for the public supervision of charities through his *parens patriae* powers." (citing *In re Estate of Coleman*, 317 A.2d 631 (Pa. 1974))).