**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDI CHANNON,

    Defendant - Appellant.

No. 19-2028

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MATTHEW CHANNON,

    Defendant - Appellant.

No. 19-2029

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 1:13-CR-966-JCH-KK-1 and 1:13-CR-966-JCH-KK-2)**
_____

Katayoun A. Donnelly, Azizpour Donnelly LLC, Denver, Colorado, for Defendant-Appellant Brandi Channon.

James L. Hankins, Edmond, Oklahoma, for Defendant-Appellant Matthew Channon.

C. Paige Messec, Assistant United States Attorney (John C. Anderson, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **BRISCOE**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

At first glance, a district court's order of forfeiture and its order of restitution may appear to be a double punishment to a defendant—especially when the district court orders a defendant to pay forfeiture and restitution in the same amount. But forfeiture and restitution are distinct remedies. Restitution exists to make victims whole. Forfeiture, on the other hand, exists to punish those who commit crimes. In this case, Defendants fraudulently obtained over $100,000 in store credit, redeemed those credits for merchandise and prepaid debit cards, and then sold that same merchandise on the internet.

Unsurprisingly, no one disputes how to calculate the value of the loss to the retailer—the loss equals the value of the fraudulently obtained merchandise. But what is Defendants' gain? Is it the value of the fraudulently obtained merchandise? Or is it solely the profit Defendants received from selling the merchandise? And do Defendants have a forfeitable gain if they sell the merchandise for less than market value?

In some cases, a defendant either does not resell fraudulently obtained merchandise or does so at a discount and thus has no profit above the value of the merchandise. To address that scenario, we hold that a district court may base a judgment's forfeiture amount on the value of the fraudulently obtained merchandise at the time a defendant acquired it. We further hold that a district court may not

2

reduce or eliminate criminal forfeiture because of restitution. Finally, we reaffirm our holding that *in personam* money judgments representing the amount of unlawful proceeds are appropriate under the criminal forfeiture statutes. United States v. McGinty, 610 F.3d 1242, 1245 (10th Cir. 2010). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's forfeiture order.

I.

Defendants—a married couple—opened numerous rewards accounts at OfficeMax using fictitious names and addresses. They fraudulently claimed other customers' purchases as their own to generate undeserved rewards through OfficeMax's customer loyalty program. As part of the scheme, Defendants also violated the terms of the reward program by using various accounts to sell more than 27,000 used ink cartridges to OfficeMax in exchange for OfficeMax rewards. Defendants' scheme lasted twenty-one months. In that time, they redeemed $105,191 in OfficeMax rewards.

A jury convicted Defendants of wire fraud and conspiracy to commit wire fraud relating to their scheme to defraud OfficeMax in violation of 18 U.S.C. §§ 1343 and 1349. At sentencing, after an evidentiary hearing, the district court ordered Defendants to pay $96,278 in restitution to OfficeMax and entered a separate forfeiture money judgment jointly and severally against Defendants in the amount of $105,191. Defendants appealed. In their first appeal, Defendants argued, among other things, that the district court erred when it entered a forfeiture money judgment without proving the $105,191 constituted, or was derived from, proceeds traceable to

3

the wire fraud. Specifically, Defendant Matthew Channon posited that the government made no attempt to trace the OfficeMax rewards to cash. The government, on the other hand, contended that they proved Defendants fraudulently acquired OfficeMax rewards with a face value of $105,191, *and* that Defendants exchanged that credit for $105,191 in actual merchandise. At oral argument in their first appeal, Defendants spent their entire argument regarding forfeiture disputing the *amount* of forfeiture the district court ordered. Specifically, Defendant Brandi Channon's attorney argued that if a defendant steals something worth $50,000, but sells it for $3,000, the gain to that defendant, and thus the proper amount of forfeiture, is $3,000, not $50,000.

We upheld the district court's admission of certain challenged exhibits but remanded for further proceedings on the money judgment of forfeiture in light of the Supreme Court's decision in Honeycutt v. United States, 137 S. Ct. 1626 (2017). Honeycutt held, among other things, that the substitute-asset provision of the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853(p), provides the only method for the forfeiture of untainted property; that is, property *not* flowing from or used in the crime itself. Id. at 1632. At the time, we stated:

> Defendants last argue that the government failed to meet its burden to prove the amount forfeited ($105,191) was traceable to the offense of wire fraud. We have held that wire fraud proceeds are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. See United States v. Courtney, 816 F.3d 681, 685 (10th Cir. 2016). The property subject to forfeiture includes "[a]ny property, real, or personal, which constitutes or is derived from proceeds traceable to [the] violation." 18 U.S.C. § 981(a)(1)(C). The substitute-asset provision, 21 U.S.C. § 853(p),

4

provides the only method for the forfeiture of untainted property. Honeycutt v. United States, 137 S. Ct. 1626, 1633 (2017).

The government concedes a remand to conform the money judgment to the requirements of § 853(p) may be necessary. The government explains that going forward it will seek only to enforce a forfeiture money judgment through the substitute-asset provisions of § 853(p) and will seek to amend the forfeiture order under Fed. R. Crim. P. 32.2(e). Accordingly, we remand so the district court may conduct further proceedings on this issue.

United States v. Channon, 881 F.3d 806, 812 (10th Cir. 2018).

On remand, Defendant Matthew Channon sought another evidentiary hearing on the money judgment. Defendants argued that the district court incorrectly calculated the forfeiture amount and had to determine the amount of profit they received through their fraudulent scheme. The government objected to the motion, contending that our mandate "left that determination untouched." The district court did not hold a second evidentiary hearing. Instead, it amended its order, clarifying that if the government seeks forfeiture of substitute-property—i.e., untainted property when the tainted property is unavailable—it must satisfy § 853(p)'s requirements at that time. Defendants again appealed the district court's forfeiture order.

## II.

In this second appeal, Defendants fault the district court for simply amending the judgment to clarify that the government must satisfy the requirements of § 853(p) when seeking forfeiture of substitute property. Defendants assert that our mandate required an evidentiary hearing on the proper forfeiture amount because the government failed to prove the amount of profit Defendants realized as a result of their scheme. Defendants further contend the district court failed to make specific

5

findings as to what tainted assets each Defendant obtained as a result of their criminal activity, whether any need existed for substitution of untainted assets for the tainted assets, and whether the value of the substituted asset is equal to or less than the value of unavailable tainted assets. Finally, they assert that Supreme Court precedent foreclosed the district court from holding Defendants jointly and severally liable for the entire forfeiture judgment.

We first examine the language of our prior mandate, looking to whether the district court acted within its discretion in failing to hold an evidentiary hearing after remand. We then turn to the district court's forfeiture order. For the reasons set forth below, we conclude that the district court did not abuse its discretion in refusing an evidentiary hearing. We further hold that the district court properly entered the money judgment in the amount of $105,191 and that the district court did not err in imposing joint and several liability against Defendants. Finally, we hold that the government may satisfy § 853(p)'s substitute-asset requirements at the time it seeks forfeiture of substitute assets.

## A.

We first address the parties' disagreement regarding the scope of our prior mandate. Defendants believe our mandate required the district court to hold an evidentiary hearing while the government contends that the district court had the discretion to hold a hearing but did not have an obligation to begin anew. We agree with the government.

Under the law of the case doctrine, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." Harte v. Bd. of Comm'rs of Cty. of Johnson, Kan., 940 F.3d 498, 510 (10th Cir. 2019) (quoting Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah, 114 F.3d 1513, 1520 (10th Cir. 1997)). An important corollary of the law of the case doctrine—the "mandate rule"—"provides that a district court must comply strictly" with the reviewing court's mandate. Id. Although "[i]nterpretation of the mandate is an issue of law that we review de novo," id., "where the appellate court has not specifically limited the scope of the remand, the district court generally has discretion to expand the resentencing beyond the sentencing error causing the reversal." United States v. West, 646 F.3d 745, 748 (10th Cir. 2011). In this Circuit, "unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard." Id. at 749. In practice, a district court looks "to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise[s] discretion in determining the appropriate scope." Id.

In interpreting the prior panel's forfeiture holding, we look to the language of the prior opinion and, in particular, the mandate. Harte, 940 F.3d at 511. The panel acknowledged the government's concession that a remand to conform the money judgment might be necessary and set forth the government's position that it would seek to enforce a forfeiture money judgment only through the substitute-asset provisions of § 853(p). The panel remanded "so the district court may conduct further proceedings on this issue." Channon, 881 F.3d at 812. Nothing in the prior

7

panel's holding cabined the district court on remand. Importantly, nothing in the prior panel's holding indicated to the district court that it had erred in calculating the amount of forfeiture money judgment. Thus, the mandate's language did not require the district court to hold an evidentiary hearing on the forfeiture amount. Accordingly, the district court retained the discretion to make its own determination on Matthew Channon's hearing request.

The dissent argues that the district court should not have relied on the language of the opinion to determine the mandate. Instead, the dissent tells us that in addition to looking at the clear language of the order, the district court should have also examined the parties' arguments from the first appeal. The mandate rule demands no such inquiry and the dissent provides no basis for one. Prior to the first appeal, the district court had held a hearing at which time it listened to testimony, viewed evidence, and calculated a forfeiture money judgment. Defendants appealed that judgment. The prior panel remanded based on the government's concession that the language of the judgment needed to reference § 853(p)'s requirements—no more explanation, no less. The prior panel did not specifically cabin the district court's actions on remand. Did the mandate give the district court the discretion to hold a second hearing? Absolutely. But did it require a second hearing? No. The dissent's statement that the mandate encompassed "the general arguments raised by the Channons" in their appeal does not comport with the long-standing and established discretion we afford a district court. Indeed, the dissent's position that we must scour the Court record for appellate arguments made in prior appeals finds no support in

8

our precedents. And we decline to require district courts on remand to rehash every argument mentioned in old briefing, but not set forth in the mandate.

Now, we turn to whether the district court abused that discretion in refusing to hold a second evidentiary hearing.

B.

Defendants assert the district court erred: (1) by declining to revisit the amount of the money judgment representing the proceeds of the scheme, (2) by holding them jointly and severally liable, and (3) by failing to determine the need for substitution of untainted assets for tainted assets or to determine whether the value of the substituted asset is equal to or less than that of the unavailable tainted assets Defendants obtained.[1] Defendant Matthew Channon principally relies on Honeycutt, which held that the procedure outlined in § 853(p) is the only way for the government to recoup substitute property (which prompted the government's concession to remand) and that forfeiture is limited to property the defendant himself actually acquired as a result of the crime. He argues that Honeycutt required a hearing on remand to determine whether the government met its burden and to amend the judgment so as to not hold him and his wife jointly and severally liable. Defendant Brandi Channon's argument focuses on the district court's understanding of the

---

[1] The dissent asserts that we acknowledge, but then ultimately fail to address these issues on the merits. We disagree. See infra Section II.B.3. (discussing that nothing in the text of § 853(p) limits the substitute property eligible for forfeiture to property that the defendant owns *at the time of sentencing* and that the government *will* have to prove one of the elements in § 853(p)(1) before the district court may order forfeiture of specific substitute property under § 853(p)(2)).

9

difference between restitution and forfeiture. We review the district court's interpretation of the federal forfeiture laws de novo, McGinty, 610 F.3d at 1245, and its factual findings for clear error, United States v. Bader, 678 F.3d 858, 893 (10th Cir. 2012).

1.

We first consider whether the district court had an obligation to revisit the amount of the money judgment. And we begin our inquiry with the plain language of the statute. McGinty, 610 F.3d at 1245. The criminal forfeiture statute at issue provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . 'specified unlawful activity'" including wire fraud "is subject to forfeiture to the United States." 18 U.S.C. § 981(a)(1)(C). The statute defines "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). The Code further provides that if a defendant is charged in a criminal case "with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," the government may include a notice of forfeiture in the charging document. 28 U.S.C. § 2461(c). And if the defendant is convicted of the offense giving rise to the forfeiture, "the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure." Id. *In personam* money judgments representing the amount of unlawful proceeds are appropriate under criminal

10

forfeiture.[2]  McGinty, 610 F.3d at 1246.  Thus, a district court may award the government a money judgment against a defendant for the value of what he obtained from his criminal activity.  Id.

Defendants do not dispute that a district court may award a forfeiture judgment, but instead fault the district court for entering a forfeiture judgment based on the value of the merchandise and certificates they redeemed through OfficeMax rewards.[3]  Defendants specifically claim that because the district court based both the restitution and forfeiture amounts on OfficeMax's loss, the forfeiture judgment constitutes a double recovery.  But awarding a forfeiture amount equal to restitution does not amount to a double recovery.  Id. at 1247.

"Criminal forfeiture and restitution are separate remedies with different purposes."  Id.  Restitution—designed to compensate victims and restore their losses—is not punitive, but rather is remedial in nature.  Id.  Forfeiture—the vesting of title in the United States in a defendant's tainted property—is punitive in nature and seeks to disgorge any profits that the offender realized from his illegal activity.  Id.; see also United States v. Awad, 598 F.3d 76, 78 (2d Cir. 2010) (stating that

---

[2] An "*in personam*" judgment is a "judgment that imposes personal liability on a defendant and that may therefore be satisfied out of any of the defendant's property within judicial reach."  Black's Law Dictionary 861 (8th ed. 1999).

[3] Restitution and forfeiture are not the same amount in this case because the district court considered the value of the used ink cartridges Defendants brought to OfficeMax and subtracted that amount from the value of the merchandise Defendants obtained from OfficeMax with the fraudulent rewards.  Because of the value of the used ink cartridges, the district court reduced OfficeMax's loss—the restitution amount—to $96,278.

11

forfeiture "is concerned not with how much an individual has but with how much he received in connection with the commission of the crime" (quoting United States v. Casey, 444 F.3d 1071, 1077 (9th Cir. 2006))).  Because restitution (calculated based on the victim's loss) and forfeiture (calculated based on the offender's gain) are distinct remedies, "ordering both in the same or similar amounts does not generally amount to a double recovery."  McGinty, 610 F.3d at 1247.

We understand that the orders of forfeiture and restitution may at first glance appear to be a double or alternative punishment.  Both order cash payments that approximate OfficeMax's loss.  But Defendants' "double recovery" argument runs afoul of not only our precedent, but also the text of the statute.  Section 981 treats as "proceeds" any "property" that a defendant "obtained directly or indirectly" as a result of the commission of the theft of property and "is not limited to the net gain or profit realized from the offense."  18 U.S.C. § 981(a)(2)(A).

Likewise, case law provides that restitution and forfeiture serve different goals.  McGinty, 610 F.3d at 1247.  "[T]hat the combination of a forfeiture order and a restitution order results in a form of punitive damages piled on top of the other penalties for the defendant's crime" is appropriate given that fraud is a concealable offense.  United States v. Navarrete, 667 F.3d 886, 888 (7th Cir. 2012); see also McGinty, 610 F.3d at 1247–48 (concluding that requiring an offender to pay both restitution and forfeiture "at worst forces the offender to disgorge a total amount equal to twice the value of the proceeds of the crime" (quoting United States v. Taylor, 582 F.3d 558, 566 (5th Cir. 2009))).  "Given the many tangible and intangible

12

costs of criminal activity, this is in no way disproportionate to the harm [the offense] inflicted upon government and society." McGinty, 610 F.3d at 1247–48 (quoting Taylor, 582 F.3d at 566).

To illustrate their position, Defendants ask us to imagine a defendant who steals a $50,000 piano from a music store and then sells that piano for $3,000. Defendants argue that the music store is entitled to $50,000 in restitution and the government is entitled to $3,000 in forfeiture. Defendants' argument overlooks the distinction between restitution and forfeiture. In addition to Defendants' scenario— where the hypothetical thief sells the piano for less than $50,000, let's also assume a scenario where the thief keeps the piano for his personal use. Under either scenario, the thief realizes a gain of $50,000—the value of the piano at the time of the wrongdoing. The thief does not need to sell the piano for more than its value to realize a gain.[4] The forfeiture statute says that "any property . . . which constitutes or is derived from proceeds traceable to" the scheme is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). Nothing in the statute requires that Defendants re-sell the OfficeMax merchandise to realize a gain. Put simply, the government is entitled to forfeiture in the amount of Defendants' proceeds, and OfficeMax, the victim, was entitled to restitution in the amount of its loss. United States v. Arnold, 878 F.3d 940, 946 (10th Cir. 2017).

---

[4] Although not at issue in this case, assume that hypothetical thief sells the piano for $53,000. In that scenario, the thief's gain is $53,000.

13

Statutes mandating restitution and forfeiture do not allow a defendant's payments toward one to offset the amount owed to the other.  Id.  In this case, Defendants either did not resell the merchandise they fraudulently obtained from OfficeMax or claim that they sold it at a discount and thus had no profit above the value of the merchandise.[5]  Thus, because Defendants did not resell the merchandise or sell it for a profit above the value of the merchandise, we base Defendants' gain on the value of the merchandise at the time they obtained it.  And at trial, the government presented evidence showing that Defendants redeemed certificates for merchandise worth $105,191—property traceable to Defendants' scheme.[6]

Remarkably, the dissent contends that Defendants do not and have "never made" the argument contesting the forfeiture amount and suggests that we misunderstand Defendants' arguments.  Yet both in this second appeal and the first appeal Defendants challenged the forfeiture amount.  As mentioned above, Brandi Channon's counsel at the first oral argument argued that Defendants sold the

---

[5] The dissent asserts that Defendants do not claim that they sold the merchandise at a discount and thus had no profit above the value of the merchandise.  In her opening brief, Brandi Channon argued that the "Government has presented evidence of the loss of OfficeMax, but no evidence concerning the actual gain by the Channons, which is likely much less *because the evidence at trial indicated that the Channons sold items received as a result of their use of OfficeMax rewards at a deep discount*."  Appellant Brandi Channon's Opening Br. at 18–19 (emphasis added).

[6] The dissent posits that we appear to place the burden on criminal defendants to prove what happened to merchandise obtained from their crimes.  Not so.  The government, as it did in this case, must prove the amount of loss.  And before the district court may order forfeiture of specific substitute property, the government must prove one of the elements in § 853(p)(1).  See infra Section II.B.3.

14

merchandise at discounted prices, so the district court erred in its forfeiture calculation. In her briefing in this appeal, Brandi Channon stated she wanted to underscore "the conceptual difference between restitution, which is a measure of loss to the victim; as opposed to forfeiture, which is a measure of gain by the perpetrator." Appellant Brandi Channon Br. at 11. She then raised the piano example by way of analogy and said:

> Channon perceives force in this example because it illustrates the defense argument—that the $105,191.00 figure proffered by the Government as the forfeiture amount does not include with any acceptable degree of proof by the Government that this figure represents the amount of gain to the Channons traceable to the wire fraud conviction *as distinguished from the amount of loss to Office Max.*

> It may well be that the Government agrees to comply with § 853(p) at the time that it seizes and attempts to convert assets to cash, but that does not resolve the central attack of the Channons on the amount of judgment itself.

Id. at 18 (emphasis in original). Brandi Channon clearly perceives the "central attack" in this appeal to be "the amount of judgment itself."

Despite the dissent's assertions to the contrary, Defendant Matthew Channon also shared this view. In his "Motion for Evidentiary Hearing to Determine Forfeiture Amount" filed in the district court after remand, but before the second appeal, Matthew Channon asked "the Court to set this matter for an evidentiary hearing to determine the actual amount of gain to the Channons; and then, and only then, if the government satisfies its burden of proof on that issue, *to identify traceable property, or substitute assets, for satisfaction of any forfeiture judgment*" (emphasis added). By way of example, he not only used the piano example, but also argued that "If a $30 gift card was sold for $10, then the gain to the Channons would

15

have been $10, not $30." Id. at DNM 255.  Again, Matthew Channon sought to re-

litigate the forfeiture *amount* on remand and then "and only then" identify traceable

property or substitute assets.

We conclude the district court properly determined the forfeiture judgment

based on the value of the merchandise and, as a result, did not abuse its discretion in

declining to hold a second evidentiary hearing.

2.

Defendants next argue that the district court erred in holding them jointly and

severally liable for the forfeiture judgment.  Defendant Matthew Channon asserts that

Honeycutt made clear that the criminal forfeiture statute does not permit joint and

several liability.  Under his interpretation of Honeycutt, the government may only

substitute untainted assets (money) for the tainted assets that the defendant personally

(not jointly with his wife) obtained.  Because Defendants did not raise this issue to

the district court on remand—after the Supreme Court decided Honeycutt—we

review for plain error.[7]  Accordingly, Defendants must show "(1) there was error,

---

[7] Defendants refuse to make their arguments under a plain error standard of review.  They assert that the district court failed on remand to apply new Supreme Court law in accordance with our direction for the district court to "conduct further proceedings on this issue."  True, the Supreme Court decided Honeycutt prior to our remand.  But once back in the district court, Defendants never asked the court in their requests for hearing to reassess the forfeiture order because they believed Honeycutt prohibited joint and several liability.  The dissent believes Defendants did not have an opportunity to raise this issue.  Defendants had such an opportunity.  Defendant Matthew Channon filed a "Motion for Evidentiary Hearing to Determine Forfeiture Amount" in the district court following the remand.  He never mentioned joint and several liability.  Instead, he focused his request for a hearing on the district court's alleged error in properly calculating their gain.

16

(2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Headman, 594 F.3d 1179, 1183 (10th Cir. 2010) (quoting United States v. Fields, 516 F.3d 923, 943 (10th Cir. 2008)).

We note that a circuit split has developed over whether Honeycutt applies to a forfeiture under 18 U.S.C. § 981(a)(1)(C). In Honeycutt, the Supreme Court analyzed a forfeiture under a different statute, 21 U.S.C. § 853(a), which states that "[a]ny person convicted of a violation of this subchapter . . . shall forfeit to the United States . . . (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." To limit forfeiture to property that the defendant actually acquired under that statute, the Supreme Court relied on § 853(a)'s phrase "the person obtained." Honeycutt, 137 S. Ct. at 1632–33. This led the Supreme Court to hold that a defendant may not be "held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." Id. at 1630, 1634. Unlike § 853(a), Congress did not write the phrase "the person obtained" into § 981(a)(1)(C). The circuits concluding that Honeycutt does not apply to § 981(a)(1)(C) identified that phrase as the "linchpin" of the Supreme Court's decision. Compare United States v. Sexton, 894 F.3d 787, 799 (6th Cir. 2018) (holding Honeycutt's reasoning does not apply to a forfeiture under § 981(a)(1)(C)), and United States v. Peithman, 917 F.3d 635, 652 (8th Cir. 2019) (same), with United States v. Gjeli, 867 F.3d 418, 427 n.16, 428 (3d Cir. 2017) (holding that a court may

17

no longer impose joint and several liability in a forfeiture under § 981(a)(1)(C) after Honeycutt).

We do not need to weigh in on whether Honeycutt applies to forfeitures under § 981(a)(1)(C) for two reasons. First, under plain error review, Defendants must show that the district court committed obvious error. United States v. Cingari, 952 F.3d 1301, 1305 (11th Cir. 2020) (concluding Defendants could not demonstrate an obvious error in the same situation). The textual difference between § 853 and § 981 proves fatal to this plain error argument. Id. at 1306. Moreover, because of the split in authority on whether Honeycutt applies to a § 981 forfeiture, we cannot rely on Honeycutt as the basis for obvious error.[8] See United States v. Teague, 443 F.3d 1310, 1319 (10th Cir. 2006) ("If neither the Supreme Court nor the Tenth Circuit has

---

[8] Even if Honeycutt applied to § 981(a)(1)(C), Defendants failed to show that its analysis plainly applies to them. In Honeycutt, the Supreme Court's analysis turned on an employer-employee relationship. The employer-owner in that case obtained the profits while the salaried employee did not. "Honeycutt's bar against joint and several forfeiture for co-conspirators applies only to co-conspirators who never possessed the tainted proceeds of their crimes." United States v. Tanner, 942 F.3d 60, 67–68 (2d Cir. 2019). "But when each co-conspirator acquired the full proceeds 'as a result of the crime,' each can still be held liable to forfeit the value of those tainted proceeds." Id. at 68 (quoting Honeycutt, 137 S. Ct. at 1635). Defendants are a married couple who lived together and enjoyed the benefits of their scheme together. The facts here are unlike the case of a drug kingpin and several drug dealers who do not have any relationship or shared benefits outside of the conspiracy. In that scenario, each member would take his cut and go his separate way, resulting in different forfeiture amounts. The record indicates that both Defendants acquired the full proceeds of their conspiracy as a result of their scheme. For example, Defendant Brandi Channon's attorney at sentencing told the district court that "as a result of being married to Mr. Channon, she was a . . . passive recipient of those benefits."

18

ruled on the subject, we cannot find plain error if the authority in other circuits is split."). Thus, we see no plain error in the district court's decision to hold them jointly and severally liable for the entire forfeiture amount.

3.

We agree with Defendants that the government will have to prove one of the elements in § 853(p)(1) before the district court may order forfeiture of specific substitute property under § 853(p)(2).[9] The government, however, is not required to do so at sentencing. See United States v. Newman, 659 F.3d 1235, 1242–43 (9th Cir. 2011) ("Because the government sought a money judgment in the first instance, there was no need to seek *substitute* property." (emphasis in original)). Federal Rule of Criminal Procedure 32.2(b)(4)(C) allows Defendants or the government the opportunity to appeal a district court's amended order regarding substitute property when that order granting or denying the amendment becomes final. Accordingly, the district court did not err in declining to hold an evidentiary hearing on remand to determine the need for substitution of untainted assets for tainted assets or to determine whether the value of the substituted asset is equal to or less than that of the unavailable tainted assets Defendants obtained.

_____

[9] Pursuant to § 853(p)(1), the district court shall order the forfeiture of substitute property when, as a result of a defendant's act or omission, the tainted property:
> (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty.

19

The dissent finds our holding that a district court may order forfeiture in the form of a money judgment against a defendant at the time of sentencing troubling. We agree with the dissent that if Defendants are still in possession of the tainted merchandise, then those items are subject to forfeiture under the applicable statutes. We also agree with the dissent that only if the government proves the existence of one or more of the circumstances described in § 853(p)(1) can it seek the forfeiture of untainted property. But we part ways with the dissent when it comes to when the government must meet its burden. Section 853(p) does not require the government to prove the existence of one or more of the circumstances described in § 853(p)(1) at sentencing. Indeed, nothing in § 853(p)'s text "limit[s] the substitute property eligible for forfeiture to property that the defendant owns at the time of sentencing." United States v. Nejad, 933 F.3d 1162, 1165 (9th Cir. 2019). As the Nejad court pointed out, a contrary rule "would allow an insolvent defendant to escape the mandatory forfeiture penalty Congress has imposed simply by spending or otherwise disposing of his criminal proceeds before sentencing."[10] Id.

---

[10] In addition to nothing in the statute or the Rules requiring the government to prove the elements in § 853(p)(1) at the time of sentencing, the practical concern exists that the government often does not have evidence showing what proceeds a defendant has in possession at that time. As we explained in Arnold, Federal Rule of Criminal Procedure 32.2 "anticipates the possibility that the court may not be able to determine the amount of the money judgment before sentencing." Arnold, 878 F.3d at 944. In this case, the government does not have evidence of what Defendants did with the merchandise they obtained from OfficeMax. The government, however, proved that the Channons fraudulently obtained $105,191 of actual merchandise from OfficeMax.

20

We also note that, to the extent Defendant Matthew Channon asserts that the government cannot seek substitute assets for the value of direct proceeds the government has already seized, the government agrees that this would be a double recovery and prohibited under § 853(p). The government may obtain a money judgment in the full amount of fraud proceeds and apply the value of specific forfeited property towards satisfaction of that judgment.

4.

The dissent ignores the arguments in Defendants' opening briefs in this appeal and what they identify as the "central attack" of this appeal. In order to reframe the arguments, it reaches back to Defendants' *first* appeal and quotes from Defendant Matthew Channon's brief in another appeal in order to reframe the issue on the *present* appeal: that a district court may not enter an *in personam* money judgment order of forfeiture for tainted merchandise obtained with rewards points rather than cash. But the Federal Rules of Appellate Procedure are clear that an opening brief must identify "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). "Consistent with this requirement, we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007).

True, Defendant Matthew Channon argued in his first appeal that money judgments may be appropriate when the offender acquires money but that a jury

21

convicted him and his wife of acquiring rewards points, not money. He did not

reassert that argument in this appeal. Accordingly, Defendants have waived that

argument in this appeal. Instead, Defendant Matthew Channon argued: (1) the

government did not prove he *personally* obtained certain tainted property traced to

the underlying crime; (2) the government did not prove the identified tainted assets

could not be forfeited and needed to be substituted; and (3) the government did not

prove the amount of their gain, which invalidated the forfeiture order. As mentioned

above, Defendant Brandi Channon's brief in the present appeal seeks to underscore

the conceptual difference between restitution and forfeiture and states that the

government failed to present any evidence of gain by the Channons, which caused the

forfeiture order *amount* to be "invalid and over-inflated."

"[*I*]n personam money judgments are appropriate under criminal forfeiture."

McGinty, 610 F.3d at 1246. This holding is not new. And we reaffirm it today.

Contrary to the dissent's view, our holding does not undermine or nullify the

forfeiture statutes in this case. Because the dissent would reverse based on this

waived argument, we will address it.

The dissent attempts to distinguish our prior precedent on the basis that

Defendants' original proceeds were not cash. The dissent characterizes the proceeds

traceable to the offenses of conviction as (a) unredeemed MaxPerks Rewards dollars,

(b) prepaid debit cards, (c) goods obtained through the Channons' use of the prepaid

debit cards; and (d) merchandise from OfficeMax (including gift cards). The

merchandise, however, is "proceeds" because it is property traceable to *redeemed*

22

MaxPerks Rewards dollars. Defendants fraudulently acquired OfficeMax MaxPerks Rewards—a cash equivalent that when redeemed has tangible and actual value and "proceeds" under § 981(a)(2)(A)—and then used those rewards to obtain gift cards and merchandise. And the government has proven that Defendants redeemed $105,191 of Rewards for merchandise. Thus, the merchandise was "property traceable thereto"—also making it "proceeds" under 18 U.S.C. § 981(a)(2)(A). Our reasoning in McGinty and Arnold makes sense and applies equally in this case to fraudulently obtained, redeemed rewards points. After all, criminal forfeiture is a sanction against the individual rather than a judgment against the property itself. McGinty, 610 F.3d at 1246 (quoting United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006)).

The dissent further contends that had Congress intended to authorize the government in any case to obtain an *in personam* money judgment of forfeiture equivalent to the retail value of any tainted merchandise obtained by a defendant, it would have explicitly said so. The dissent fails to point out, however, that nothing in the applicable statutes authorizes a district court to impose an *in personam* money judgment of forfeiture in *any* circumstance. And in any event, we crossed that bridge in McGinty where we held that "[a]lthough the criminal forfeiture statute does not explicitly refer to money judgments, our sister circuits have uniformly recognized that money judgments representing the unlawful proceeds are appropriate." McGinty, 610 F.3d at 1246. In the end, the dissent does not identify the specific statutory text we supposedly violate, let alone explain how we run afoul of the text.

23

And nothing in our precedent or the statute prohibits or cautions against treating a redeemed cash equivalent such as fraudulently obtained store credit or rewards points differently from cash.

AFFIRMED.

Nos. 19-2028, 19-2029, *United States v. Channon*
**BRISCOE**, Circuit Judge, dissenting.

I respectfully dissent. In my view, the majority opinion is erroneous in four respects. First, it fails to acknowledge the relevant procedural history of this case, and, as a result, misinterprets the prior mandate. Second, the majority opinion acknowledges, but then ultimately fails to address on the merits, the key arguments asserted by the Channons in these appeals. Third, and most problematic for future cases, the majority opinion ignores the plain language of the applicable forfeiture statutes, and also improperly extends circuit precedent, by authorizing the entry of *in personam* money judgments of forfeiture in cases, such as those at hand, where the offenses of conviction resulted in the defendants obtaining items of personal property rather than money. In other words, the majority opinion, in direct contravention of the applicable forfeiture statutes, allows the government to seize property that was not derived from the offenses of conviction (untainted property) without having first proven what proceeds defendants actually derived from their offenses of conviction (tainted property) and why that tainted property was not available for or otherwise not subject to seizure. Lastly, the majority opinion errs in applying a plain error standard of review to the Channons' argument that the district court erred in holding them jointly and severally liable for the amended judgment of forfeiture.

In my view, the district court was obligated to conduct an evidentiary hearing at which the government was required to prove what tainted property defendants actually derived from their offenses of conviction and, if necessary, the existence of one or more

of the circumstances described in the substitute-asset provision, 21 U.S.C. § 853(p), that might allow for the seizure of untainted property. Here, those key steps were omitted, permitting the government to obtain an *in personam* money judgement by showing only the loss amount suffered by the victim—the face value of the redeemed MaxPerks Rewards. I therefore vote to reverse the district court's amended judgment of forfeiture and remand to the district court for such a hearing.

I

I begin with the scope of the original panel's mandate. The majority opinion, in interpreting this prior mandate, fails to acknowledge the arguments that were made by the Channons in their original appeals. Those arguments, however, and the manner in which they were addressed by the original panel, necessarily must inform our interpretation of the prior mandate.

In their original appeals, the Channons argued "that the government failed to meet its burden to prove the amount forfeited ($105,191) was traceable to the offense of wire fraud." *United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018) (*Channon I*). For her part, Brandi Channon argued:

> The $105,191 money judgment forfeiture against the Channons is based on disregard of the language of 18 U.S.C. § 981(a)(1)(C). The forfeiture is in the amount of the face value of the redeemed MaxPerks Rewards. But that's not how § 981(a)(1)(C) works. It does not say "[a]ny property" is subject to forfeiture, as the government would have it. What property may be forfeited under § 981(a)(1)(C) is "[a]ny property . . . which constitutes or is derived from proceeds traceable to" the offense.

2

Money judgments may be appropriate when money is what the offender acquires as a results of the offense. The Channons were convicted of acquiring Rewards and merchandise, not money. The Rewards can only be used to buy OfficeMax merchandise. The government alleged in the indictment the Channons conspired to obtain merchandise and it set out to prove at trial the Channons exchanged Rewards for merchandise. It presented evidence of OfficeMax merchandise in the Channons' home as support for that contention. It seized the merchandise.

The government made no attempt at the forfeiture evidentiary hearing to trace the Rewards to cash. It did not attempt to prove the market value of the Rewards. It simply declared it was entitled to forfeiture of money equivalent to whatever the Rewards certificates indicated they were worth in discounts on OfficeMax merchandise. Section 981(a)(1)(C) does not contemplate such an outcome. This Court must vacate the money judgment forfeiture and remand for further proceedings.

Case No. 16-2285, Aplt. Br. at 36-37.

And Matthew Channon similarly argued:

The $105,191 money judgment forfeiture against the Channons is based on a disregard of the language of 18 U.S.C. § 981(a)(1)(C). The forfeiture is in the amount of the face value of the redeemed MaxPerks rewards. But that's not how § 981(a)(1)(C) works. It does not say "[a]ny property" is subject to forfeiture, as the government would have it. What property may be forfeited under § 981(a)(1)(C) is "[a]ny property . . . which constitutes or is derived from proceeds traceable to" the offense.

Money judgments may be appropriate when money is what the offender acquires as a result of the offense. The Channons were convicted of acquiring rewards, not money. The rewards can only be used to buy OfficeMax merchandise. The government alleged in the indictment the Channons conspired to obtain merchandise and it set out to prove at trial the Channons exchanged rewards for merchandise. It presented evidence of OfficeMax merchandise in the Channons' home as support for that contention. It seized that merchandise.

The government made no attempt at the forfeiture evidentiary hearing to trace the rewards to cash.

3

Case No. 16-2254, Aplt. Br. at 42-43.

The government argued, in response:

> The Channons received valuable merchandise from OfficeMax as the proceeds of their fraud. Those proceeds were dissipated, hidden, or otherwise untraceable, making a money judgment the only means of taking title of the Channons' unlawful gains. The district court did not err in awarding the United States a money judgment in the amount of their fraud proceeds.

Case No. 16-2254, Aple Br. at 53. The government also filed a Rule 28(j) letter stating,

in pertinent part:

> Going forward, including in the Channons' case, the government w[ould] . . . seek to enforce a forfeiture money judgment only through the substitute-asset provision of § 853(p). In other words, in seeking to forfeit specific property of the Channons to satisfy the money judgment, the government will move to amend the forfeiture order under Federal Rule of Criminal Procedure 32.2(e) and will establish under § 853(p) that the proceeds are unavailable or are substantially diminished in value.

Aple. Rule 28(j) Letter at 1.

The original panel had this to say about the parties' arguments, under the general

heading description "Forfeiture":

> Defendants last argue that the government failed to meet its burden to prove the amount forfeited ($105,191) was traceable to the offense of wire fraud. We have held that wire fraud proceeds are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. *See United States v. Courtney*, 816 F.3d 681, 685 (10th Cir. 2016). The property subject to forfeiture includes "[a]ny property, real, or personal, which constitutes or is derived from proceeds traceable to [the] violation." 18 U.S.C. § 981(a)(1)(C). The substitute-asset provision, 21 U.S.C. § 853(p), provides the only method for the forfeiture of untainted property. *Honeycutt v. United States*, ⸺ U.S. ⸺, 137 S. Ct. 1626, 1633, 198 L. Ed. 2d 73 (2017).

4

> The government concedes a remand to conform the money judgment to the requirements of § 853(p) may be necessary. The government explains that going forward it will seek only to enforce a forfeiture money judgment through the substitute-asset provisions of § 853(p) and will seek to amend the forfeiture order under Fed. R. Crim. P. 32.2(e). Accordingly, we remand so the district court may conduct further proceedings on *this issue*.

*Channon I*, 881 F.3d at 811–12 (emphasis added).

There has been confusion on the part of the parties, and I would submit the district court as well, regarding the meaning of the concluding phrase "this issue." The Channons have consistently interpreted the phrase "this issue" as referring to their general challenge to the district court's original judgment of forfeiture as identified in the original panel's ruling just quoted: "Defendants last argue that the government failed to meet its burden to prove the amount forfeited ($105,191) was traceable to the offense of wire fraud." The government, in contrast, has interpreted it as referring only to the government's concession that a remand was necessary to conform the judgment to the requirements of § 853(p).

In deciding between these two competing interpretations, it is important to note that the panel in *Channon I* acknowledged, but did not expressly address, defendants' argument "that the government failed to meet its burden to prove the amount forfeited ($105,191) was traceable to the offense of wire fraud." *Id.* at 811. Likewise, the panel acknowledged, but again did not expressly address, the government's concession that "a remand to conform the money judgment to the requirements of § 853(p) may be necessary." *Id.* at 811-12. In addition, the panel discussed both defendants' arguments

5

and the government's concession under the general heading of "Forfeiture." *Id.* at 811.

Therefore, the better interpretation of the prior mandate is that it was intended to encompass both the issue raised by defendants, i.e., the general challenge to the judgment of forfeiture, and the § 853(p) issue raised by the government in its concession. To conclude that the remand was limited only to the § 853(p) issue raised by the government would mean that we would have to interpret the decision in *Channon I* as having implicitly rejected the Channons' general challenge to the original judgment of forfeiture order. Nothing in *Channon I*, however, suggests that this was the prior panel's intent.

Unfortunately, the majority opinion fails to acknowledge the full scope of the arguments asserted by the Channons in their original appeals, and all but ignores the parties' competing interpretations of the original panel's mandate. Further, the majority opinion treats the phrase "this issue" in *Channon I* as referring solely to the § 853(p) issue raised by the government. Maj. Op. at 8 ("The prior panel remanded based on the government's concession that the language of the judgment needed to reference § 853(p)'s requirements—no more explanation, no less."). For the reasons outlined above, I think that this is both incomplete and incorrect.

Because, in my view, the prior mandate encompassed both the general arguments raised by the Channons and the § 853(p) issue raised by the government, I believe that the district court was required to do more on remand than simply issue an amended judgment of forfeiture. *See generally Harte v. Bd. of Comm'rs*, 940 F.3d 498, 510 (10th Cir. 2019) (holding that "a district court must comply strictly" with the mandate). More

6

to the point, I disagree with the majority opinion's conclusion that "the [prior] mandate's language did not require the district court to hold an evidentiary hearing on the forfeiture" issues raised by the defendants.[1]  Maj. Op. at 7.

## II

Near the beginning of Section II, the majority opinion correctly summarizes the key arguments made by the Channons in the present appeals:

> Defendants further contend the district court failed to make specific findings as to what tainted assets each Defendant obtained as a result of their criminal activity, whether any need existed for substitution of untainted assets for the tainted assets, and whether the value of the substituted asset is equal to or less than the value of unavailable tainted assets.

*Id.* at 4-5.  In other words, the Channons argue in their current appeals, as they did in their original appeals, that the government failed to meets its burden of proving the existence of any tainted property that they obtained from their crimes of conviction[2] or,

---

[1] Whether or not it was the responsibility of the district court to decipher the mandate by examining the parties' arguments from the first appeal, it is most certainly our duty to do so.

[2] Curiously, the majority asserts elsewhere in its opinion that defendant Matthew Channon waived his challenge to the money judgment of forfeiture that was entered by the district court.  Maj. Op. at 22.  This is incorrect.  Both of the Channons have consistently argued, both in their first appeals and again in the current appeals, that the government failed to meet its burden of proof under 18 U.S.C. § 981(a)(1)(C) and that, as a result, it was error for the district court to enter the money judgment of forfeiture.  For example, Matthew Channon's opening brief in this case describes the "ISSUES PRESENTED" as follows:
> Whether pursuant to *Honeycutt v. United States*, 137 S. Ct. 1626 (2017),
> before a court can issue a judgment to forfeit untainted money as substitute

7

alternatively, that such tainted property is unavailable for one or more of the reasons outlined in the substitute-asset provision, 21 U.S.C. § 853(p).

Unfortunately, the majority opinion, after acknowledging these arguments, makes no further mention of them. Instead, much of the remainder of the majority opinion focuses on arguments that were actually never made by either defendant: that "because the district court based both the restitution and forfeiture amounts on OfficeMax's loss, the forfeiture judgment constitutes a double recovery," Maj. Op. at 11; that, with respect to fraudulently obtained merchandise that defendants subsequently sold, forfeiture is proper only if defendants made a profit above the value of the merchandise; and, ultimately, that defendants are challenging only the amount, rather than the fact, of the money judgment of forfeiture.

### III

The most troubling aspect of the majority opinion is its "hold[ing] that a district court may base a judgment's forfeiture amount on the value of the fraudulently obtained

---

assets under 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e), it must hold a hearing to determine whether the Government has met its burden to prove that (1) the defendant obtained certain tainted money or property traced to the underlying crime, (2) pursuant to one of the subsections A-E in section 853(p) and due to the defendant's actions or omissions, the identified tainted assets cannot be forfeited and need to be substituted with untainted assets in the defendant's possession, and (3) the value of the untainted substituted assets is not higher than the initial tainted assets the defendant had obtained.

Matthew Channon Br. at 3-4.

8

merchandise at the time a defendant acquired it." *Id.* at 2; *see id.* at 13 ("Put simply, the government is entitled to forfeiture in the amount of Defendants' proceeds, and OfficeMax, the victim, was entitled to restitution in the amount of its loss."). This holding, as I shall proceed to explain, is quite remarkable because it is contrary to, and effectively nullifies, the language of the forfeiture statutes relied on by the government in this case by enabling the government to obtain an *in personam* money judgment by proving only the amount of the victim's loss.

"Criminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity. Such statutes serve important governmental interests such as 'separating a criminal from his ill-gotten gains,' 'returning property, in full, to those wrongfully deprived or defrauded of it,' and 'lessen[ing] the economic power' of criminal enterprises." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629–630 (1989)).

"If the government intends to pursue a forfeiture, Federal Rule of Criminal Procedure 32.2(a) requires that the indictment 'contain[] notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.'" *United States v. Courtney*, 816 F.3d 681, 684–85 (10th Cir. 2016) (quoting Fed. R. Crim. P. 32.2(a)). In this case, the superseding indictment notified the Channons that the government would seek forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

9

"Section 981(a)(1)(C) allows for the forfeiture of any property or proceeds traceable to an offense constituting a 'specified unlawful activity.'" *Courtney*, 816 F.3d at 685. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include any offense listed in 18 U.S.C. § 1961(1). "Among the offenses listed [in] § 1961(1) is § 1343—the wire fraud statute" that the Channons were convicted of violating. *Id.* Because § 981(a)(1)(C) "is a civil forfeiture statute," 28 U.S.C. § 2461, the other statute cited in the superseding indictment, "comes into play" and "is read as a gap-filler between civil and criminal forfeiture, in that it permits criminal forfeiture when no criminal forfeiture provision applies to the crime charged against a particular defendant but civil forfeiture for that charged crime is nonetheless authorized."[3] *Id.* (quotations omitted).

---

[3] Section 2461(c) states:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. § 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

28 U.S.C. § 2461(c).

10

The term "proceeds," as employed in § 981(a)(1)(C), carries slightly different definitions depending upon the specific criminal activity at issue. "In cases," such as the one at hand, "involving illegal goods, illegal services, [and] unlawful services, . . . the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."[4] 18 U.S.C. § 981(a)(2)(A).

As the original panel noted in *Channon I*, "[t]he substitute-asset provision, 21 U.S.C. § 853(p), provides the only method for the forfeiture of untainted property." *Channon I*, 881 F.3d at 811. Section 853(p) states as follows:

(p) **Forfeiture of substitute property**

(1) **In general**

Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant--
    (A) cannot be located upon the exercise of due diligence;
    (B) has been transferred or sold to, or deposited with, a third party;

---

[4] Section 981(a)(2)(A) also lists "telemarketing and health care fraud schemes." The First Circuit has concluded that listing these two specific fraud schemes in subsection (a)(2)(A) would have been unnecessary if Congress had intended for the generic term "unlawful activities" to be broadly interpreted to include fraud schemes. *United States v. Carpenter*, 941 F.3d 1, 7 (1st Cir. 2019). The problem here, however, is that the other two definitions of "proceeds" outlined in §§ 981(a)(2)(B) and (C) do not apply. Subsection (B)'s definition applies to "cases involving lawful goods or lawful services that are sold or provided in an illegal manner." Subsection (C)'s definition applies to "cases involving fraud in the process of obtaining a loan or extension of credit."

11

(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty.

(2) **Substitute property**

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

(3) **Return of property to jurisdiction**

In the case of property described in paragraph (1)(C), the court may, in addition to any other action authorized by this subsection, order the defendant to return the property to the jurisdiction of the court so that the property may be seized and forfeited.

28 U.S.C. § 853(p).[5]

In *Honeycutt*, the Supreme Court held that "[s]ection 853(p) demonstrates that Congress contemplated situations where the tainted property itself would fall outside the Government's reach" and, "[t]o remedy that situation, Congress did not authorize the Government to confiscate property from other defendants or co-conspirators; it authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation." 137 S. Ct. at 1634.

---

[5] Section 2461(c) expressly states that "[t]he procedures in section" 853 "apply to all stages of a criminal forfeiture proceeding." 28 U.S.C. § 2461(c). Thus, § 853(p) applies in instances where the government seeks forfeiture of so-called "substitute property," i.e., property that is untainted by the crimes of conviction.

12

The question is how these forfeiture statutes apply in the case before us. Notably, the presentence investigation reports (PSRs) that were prepared and filed in these cases provide us with some details about how the Channons committed their crimes:

> This case arose from a fraud scheme perpetrated on the former office-supply retail chain OfficeMax by Albuquerque residents Matthew and Brandi Channon. The scheme had two basic components, both of which depended on the Channons creating and controlling thousands of customer-reward accounts in fictitious names. First, the Channons used their accounts and a computer program to claim reward credit for purchases made by other customers. Second, the Channons used their many accounts to evade OfficeMax's restrictions on participation in a program in which OfficeMax would award store credit to customers who recycled used ink and toner cartridges at its stores. The Channons then used the store credit they amassed through the scheme to purchase prepaid debit cards at OfficeMax, which they could use like cash; they also used their rewards to purchase items at OfficeMax that Matthew Channon would then resell on eBay. To avoid detection, the Channons traveled across the country to execute their scheme, personally visiting over 300 different OfficeMax stores in 20 states.
>
> * * *
>
> The investigation also discovered that Matthew Channon was using multiple eBay accounts in execution of the fraud. These accounts sold merchandise obtained with MaxPerks rewards—and in some cases, sold fraudulently obtained MaxPerks Rewards certificates themselves. These accounts also purchased at least 32,000 used ink cartridges through eBay at an average cost of 32 cents per cartridge. In addition, Matthew Channon's eBay accounts purchased OfficeMax coupons, which the Channons often used in connection with the reward certificates to purchase items at OfficeMax at a discount.
>
> * * *
> Brandi Channon was interviewed during the search of the Channons' residence in Albuquerque on June 28, 2011. * * * She described how she and Matthew would travel around the country to execute the scheme, including ordering ink online and having it shipped ahead of time to the

13

> hotel they planned to stay at.  To pay for airfare they would purchase
> Southwest Airlines gift cards at OfficeMax using MaxPerks Rewards.

ROA, Vol. 3 (Brandi Channon PSR) at 3–8.

Applying § 981(a)(1)(C) to this set of facts, it appears that the "proceeds traceable to" the Channons' offenses of conviction are varied and include, among other things, (a) unredeemed MaxPerks Rewards dollars, (b) prepaid debit cards, (c) goods obtained through the Channons' use of the prepaid debit cards, and (d) merchandise from OfficeMax (including gift cards).[6]  Thus, if the Channons were, at the time of arrest, still in possession of merchandise and/or prepaid debit cards that they obtained from OfficeMax, then those items of tainted personal property are subject to forfeiture under the statute.[7]  Only if the government proves the existence of one or more of the circumstances described in § 853(p)(1) can it seek the forfeiture of untainted property.

---

[6] If the government can prove that some of these items were sold by the Channons, then the government could obtain a money judgment of forfeiture equal to the sale proceeds.  *See United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (holding that, for purposes of criminal forfeiture, "[t]he gross revenues from Gregoire's eBay sales [of stolen property] during the period alleged in the indictment were direct proceeds of his mail fraud offense of conviction").

[7] Notably, government counsel conceded at oral argument in the first appeals that items of merchandise were seized from the Channons' home during the execution of a search warrant.  But government counsel offered no explanation as to why it did not seek the forfeiture of these items under § 981(a)(1)(C), or why its failure to do so did not preclude it from seeking the forfeiture of untainted property.  And, curiously, the majority "agree[s] . . . that if Defendants are still in possession of the tainted merchandise, then those items are subject to forfeiture under the applicable statutes."  Maj. Op. at 19.  The majority, however, offers no explanation regarding precisely how, under the statutory

14

Unfortunately, the majority opinion ignores these controlling statutory provisions and the relevant facts of the Channons' crimes, and instead "hold[s] that a district court may base a judgment's forfeiture amount on the value of the fraudulently obtained merchandise at the time a defendant acquired it." Maj. Op. at 2; *see id.* at 14 ("[B]ecause Defendants did not resell the merchandise or sell it for a profit above the value of the merchandise, we base Defendants' gain on the value of the merchandise at the time they obtained it.").[8] As authority for this holding, the majority opinion cites only to two of our prior cases: *United States v. Arnold*, 878 F.3d 940 (10th Cir. 2017), and *United States v. McGinty*, 610 F.3d 1242 (10th Cir. 2010). Maj. Op. at 8-9, 11. *Arnold* and *McGinty* are distinguishable, however, because the crimes of conviction in both cases resulted in money proceeds. 878 F.3d at 941 (noting that the defendant "devised a scheme to

---

framework, this merchandise should now be forfeited and, if so, how it would impact the money judgment issued by the district court.

Somewhat relatedly, the majority opinion also discusses a hypothetical scenario in which a thief steals and then keeps a $50,000 piano. *Id.* at 13. According to the majority, the thief realized a gain of $50,000 at the time of the wrongdoing and thus is subject to a money judgment of forfeiture in that amount. *Id.* This is incorrect. Under the statutory framework outlined above, the piano would be subject to seizure and no money judgment of forfeiture would be available (unless, of course, the government could prove the existence of one or more of the circumstances described in § 853(p)(1)).

[8] The majority also, again contrary to the language of the statutory framework that is applicable here, appears to place the burden on criminal defendants to prove what happened to merchandise obtained from their crimes. *See United States v. Ursery*, 518 U.S. 267, 289 (1996) (holding that 19 U.S.C. § 1615 "governs the burden of proof in forfeiture proceedings under §§ 881 and 981"); 19 U.S.C. § 1615 (providing that the burden of proof lies on the claimant).

15

defraud individuals out of the rebates paid to them when they purchased new vehicles"); 610 F.3d at 1245 ("The government contends that it is entitled to the forfeiture of the proceeds of McGinty's misapplication of bank funds, and the district court erred in refusing to order a money judgment representing those proceeds. We agree."). Money judgments in those cases were therefore consistent with the language of the forfeiture statute. Nothing in either *Arnold* or *McGinty* can reasonably be read as suggesting that it is proper for a district court to impose an *in personam* money judgment of forfeiture against a defendant who obtains merchandise, rather than money proceeds, as a result of his crime.

In sum, the majority opinion's extension of *Arnold* and *McGinty* to the cases at hand is clearly contrary to, and effectively serves to nullify, the plain language of the forfeiture statutes relied on by the government in these cases. Had Congress intended to authorize the government in any case to obtain an *in personam* money judgment of forfeiture equivalent to the retail value of any tainted merchandise obtained by a defendant, it would have said so. But it did not.

For these reasons, I would remand the case to the district court with directions to conduct an evidentiary hearing on the forfeiture issues raised by the defendants. At that time, the government would be required to establish the existence of tainted property and/or the existence of one or more of the circumstances outlined in § 853(p)(1). In the absence of such proof, no judgment of forfeiture can properly be entered against the Channons.

16

IV

Lastly, I disagree with the majority opinion's conclusion that the Channons' challenge to the joint and several nature of the district court's amended judgment of forfeiture is subject to review only for plain error. Maj. Op. at 16. As outlined above, the Channons believed, reasonably in my view, that the prior mandate required the district court to do more than simply issue an amended judgment. Thus, on remand, the Channons moved for an "evidentiary hearing on the matter of the propriety and amount, if any, of forfeiture of money or property." ECF No. 486 at 1. The district court, however, never ruled on that motion and instead simply issued the amended judgment of forfeiture. Thus, there was never truly an opportunity for the Channons to raise the joint and several issue prior to the district court's issuance of its amended judgment of forfeiture.